**D. S. KRESGE CO. v. OTTINGER, Atty. Gen., et al.**

**ROSCHEN v. SAME.**

District Court, S. D. New York.   December 8, 1928.

I. Maurice Wormser and W. N. Seligsberg, both of New York City, for complainants.

Albert Ottinger, Atty. Gen. (Henry S. Manley, of Falconer, N. Y., of counsel), for defendants.

Before AUGUSTUS N. HAND, Circuit Judge, and KNOX and FRANK J. COLEMAN, District Judges.

AUGUSTUS N. HAND, Circuit Judge. The above suits are brought by dealers in eyeglasses to enjoin the enforcement of chapter 379 of the Laws of 1928, amending the Education Law (Consol. Laws, c. 16), so that two of its sections read as follows:

"Sec. 1432-a.  *Sales of Eyeglasses, Spectacles and Lenses at Retail.* It shall be unlawful for any person, firm or corporation to sell, at retail, as merchandise, in any store or established place of business in the state, any spectacles, eyeglasses, or lenses for the correction of vision, unless a duly licensed physician or duly qualified optometrist, certified under this article, be in charge of and in personal attendance at the booth, counter or place, where such articles are sold in such store or established place of business.  The peddling of spectacles, eyeglasses or lenses from house to house or on the streets or highways, by a person other than such an optometrist or physician, also shall be unlawful, notwithstanding any law providing for licensing peddlers."

"Sec. 1434.   *Construction of Article.* Nothing in this article shall be construed to apply to duly licensed physicians authorized to practice medicine under the laws of the state of New York nor to the sale of toy glasses, goggles consisting of plano white or plano colored lenses or ordinary colored glasses, nor to persons who sell spectacles, eyeglasses or lenses only on prescription from such physicians or from such duly qualified optometrists or who duplicate broken lenses."

Section 1433 of the Education Law of the state makes any violation of the provisions of article 54 relating to optometry a misdemeanor and subjects offenders against it to fine and imprisonment and to the imposition of penalties.

Section 1433 of the Education Law also charges the Attorney General of the state with the collection of penalties and the prosecution of offenders against the act in question.  There seem to be no provisions of the statute authorizing enforcement of the act by the district attorney of New York county or by the board of optometry examiners, who are made parties defendant, as well as the Attorney General.

In accordance with the practice established by statute (Judicial Code, § 266; 28 USCA § 380), the complainant in each case has moved for a preliminary injunction and orders have been signed convening this statutory court.  In the Roschen Case the motion is made upon the complaint and the affidavits of Miller and De Young, and in the Kresge Case the motion is made upon the complaint and the affidavits filed in the other case.

The Kresge Company alleges in its complaint that it has 50 stores in the state of New

York, at which spectacles are sold over the counter; that its employés do not examine the eyes of customers, or prescribe treatment for them, or diagnose any eye troubles; that it offers a selection of spectacles with convex spherical lenses, which are mere magnifying glasses, and do not injure the sight in any way; that customers come in and try on glasses until they find what helps them.

The Kresge Company also alleges "that it would not be possible for it to continue the sale and trading in spectacles in its stores if plaintiff were required to employ a duly qualified optometrist or a physician to be in charge of the counter at which plaintiff sells spectacles. The cost of hiring such a person in each of plaintiff's stores would far exceed not only plaintiff's profit from the sale of spectacles in each year, but would exceed plaintiff's entire income for the year from the sale of spectacles, and if plaintiff be required to place a duly licensed physician or a duly qualified optometrist in charge of each counter in each of its stores at which spectacles are sold, plaintiff would be compelled to cease and abandon the sale of spectacles in its stores."

Roschen makes similar allegations in his complaint, except that he has one, instead of many, stores.

The moving affidavits are made by men in the business of manufacturing and selling eyeglasses, who are not optometrists. They set forth that between 500,000 and 600,000 pairs of spectacles with convex lenses are sold in New York annually over the counter at from 10 cents to $1 a pair, and that many people after 40 years of age require spectacles, from physical changes in the eyes due to age; that there are estimated to be 5,000 places in New York where spectacles are sold over the counter, whereas there are only 1,850 registered optometrists in the state; that many communities in the state remote from cities have no optometrist, nor have sufficient business to maintain one, and if people in rural communities cannot purchase glasses at a general store, or drug store, many who have reached the age of presbyopia will have to go without anything to relieve their poor sight. It is further stated that most people requiring spectacles need nothing but convex spherical lenses selected by themselves, and poor people cannot afford to add to the cost of their glasses the optometrist's charge for services.

The defendants have presented affidavits by professional optometrists. They are to the effect that the proper way to relieve defective sight is not by the crude method of the selection by the person desiring glasses of lenses having magnifying power. The right and left eye of every individual is likely to be different, but even though, in the case of old sight, both eyes are substantially alike, and each eye needs a magnifying lense, yet the adjustment of the lenses can only be adequately made after careful examination and measurement by a man of scientific training. Furthermore, this examination of eyes, the sight of which is defective, detects both diseases of the eyes and general pathological conditions as well. Moreover, far sight, near sight, and astigmatism are all common conditions, and require corrective measures, and the last especially. A mere magnifying spectacle, even if it crudely compensates the changes in the lens which normally come with age, does not correct existing errors for distance and focus which may otherwise be present.

We do not understand that it is disputed by complainants that a more certain and scientific adjustment of spectacles and a more complete correction of poor eyesight may be obtained when the lenses are prescribed and fitted by a registered optometrist than when selected from a mass of different spectacles by the customer himself without any aid. But they say in the first place that the former method is expensive, unavailable to persons in rural districts, and unnecessary in most cases, and, in the second place, that the statute does not command the optometrist, who is required to be in charge of the place where the spectacles are sold, to do anything whatever.

In respect to the first contention, it might equally have been made as an objection to requiring a license to practice medicine. There are some remote localities even now that might be better off if persons having some experience in nursing were allowed to practice medicine than to be compelled in many cases to go without medical treatment because physicians are unavailable. Yet the Legislature has regarded the temptation to use makeshift remedies and employ quacks as so strong, and the results in general as so bad, that it has rigorously prohibited the practice of medicine except by licensed physicians. The same thing is true of law practice, and the hardship of being compelled to employ men educated at large expense, where in some cases self-taught practitioners, who had never been admitted to the bar, might have answered the purpose as well, is no answer to the requirement.

The second contention is the one on which complainants really rely. They contend that

the New York act violates the due process clause of the Fourteenth Amendment of the Federal Constitution, because it has no substantial relation to the public health, safety, and welfare, and therefore is not within the unclassified residue of legislative power of the state known as the police power.

But can it be justly said that an optometrist, who is "in charge of and [in] personal attendance at the place where" spectacles "are sold," would not substantially remedy the existing evils of haphazard selection of eyeglasses? Can it be reasonably argued that the licensing of physicians is illegal, because no law requires a sick man to employ a doctor? Or shall it be said that laws for fire escapes or rear vision mirrors on trucks, or life preservers and lifeboats on vessels, are unconstitutional, because they contain no directions that they be used by the tenants, drivers, or passengers. To render an optometrist available wherever eyeglasses are sold is certainly a long step toward correcting existing evils. What can the words "in charge of" mean, except to manage the business of selling spectacles to customers? It seems to us that the inevitable tendency would be for customers to consult him, and for a reputable optometrist to furnish assistance and advice as to their needs. If the effect of the new requirement should finally be to render the sale of a standardized product unprofitable, so that the customers in the end would not purchase it, but would have their eyes carefully tested and their glasses made according to special prescriptions, it cannot be said that the result might not on the whole be desirable. At any rate, whatever the result to the business of selling a standardized product, the correction of certain manifest evils was within the legislative power, and the means adopted seems to have been reasonably calculated to promote the public health and safety.

A Minnesota statute provides that "no person shall hereafter carry on, conduct, or transact business under a name which contains as a part thereof, the words, drugs, drug store, or pharmacy, * * * unless the place of business so conducted be at all times in charge of a registered pharmacist, or during the temporary absence of such registered pharmacist, in charge of a registered assistant pharmacist." Gen. St. 1923, § 5814, as amended by Laws 1925, c. 339. The Supreme Court of Minnesota seems not to have doubted that the "charge" intended by the statute is over the "business," as well as the "place," or that the act was constitutional. State v. Zotalis, 172 Minn. 132, 214 N. W. 766; State v. Levine, 173 Minn. 322, 217 N. W. 342.

We are referred to the case of Louis K. Liggett Co. v. Baldridge, Attorney General, 49 S. Ct. 57, 73 L. Ed. ——, decided by the Supreme Court on November 19th last. There a statute of Pennsylvania provided that every pharmacy should be owned by a licensed pharmacist and that no corporate drug store not already licensed to do business in the state should own a drug store there, unless all its members were registered pharmacists. A majority of the court held that "mere ownership of a drug store by one not a pharmacist bears no reasonable relation to the public health," and declared the act unconstitutional. But Justice Sutherland, who wrote the prevailing opinion, referred with evident approval to the statute of Pennsylvania, which prescribes that "no one but a registered pharmacist may lawfully have charge of a drug store." Such a requirement doubtless might exist, though no prescriptions furnished by physicians were compounded, and though the only work of the pharmacist was to sell drugs or patent medicines to customers.

The situation in the present case substantially differs from that referred to in the Liggett decision because the personal charge of the business prescribed by the New York statute extends beyond mere ownership. It brings some person of adequate scientific training in immediate contact with the customer, renders his advice and service naturally available, and has a plain tendency to obviate the defects of the present undirected and haphazard system.

A similar statute to the one under consideration has been adopted in Massachusetts.

The New York Legislature was not obliged, if it legislated at all, to require an examination of the customer by a licensed optometrist before permitting a sale of eyeglasses to him. Doubtless it could have done this. But it might adopt a halfway measure, safeguarding him by in effect placing sales in charge of a man of scientific training, and rendering the services of the latter naturally available. This it did, and this was we think constitutional.

The motions for preliminary injunctions are denied.

■ Inasmuch as the district attorney of New York county and the board of optometry are nowhere in the statute charged with the enforcement of the act, each bill is dismissed as to them for this reason, as well as for other reasons hereafter stated.

While the complaints allege in substance that the eyeglasses sold by the complainants are only magnifying spectacles, adapted to the needs of the majority of persons who have

defective sight, and harmless, yet the fact that the complainants only sold mere magnifying eyeglasses does not show that others whose sales would be affected by the requirements of the act have limited, or will limit, their sales to magnifying spectacles, and that the business in general does not require the regulation provided. Moreover, the complaints do not show that a supervision of sales of spectacles by optometrists, who can more accurately fit a customer than he can fit himself, and who will be in position to inform him as to eye troubles which cannot be remedied by magnifying glasses, is not a step in the public interest.

At the time of the argument of the motion for an injunction, we understood it to be admitted that the sale of eyeglasses, in so far as it might require examination and fitting of the eyes of purchasers of spectacles, was a valid exercise of the police power. The objection was to the particular regulation attempted, on the ground that it did not require the optometrist placed in charge of the place where spectacles were sold to examine or prescribe, and that it therefore afforded no protection to the public. But, for the reasons we have given, we are satisfied that such is not the fair interpretation of the effect of the act, and that it in fact tends to promote the public welfare.

Nothing is alleged in either complaint which shows an arbitrary or unconstitutional exercise of legislative power, or leaves any question to be determined at final hearing. Each bill is therefore dismissed against the Attorney General, as well as the other defendants, on the ground that it states no cause of action.