NATIONAL FERTILIZER ASSN., INC. ET AL. *v.*
BRADLEY ET AL.

No. 731.   Argued April 5, 1937.—Decided April 26, 1937.

*Messrs. W. C. McLain* and *Daniel S. Murph* for appellants.

*Messrs. J. Ivey Humphrey,* Assistant Attorney General of South Carolina, and *William C. Wolfe,* with whom *Messrs. John M. Daniel,* Attorney General, and *Harold Major* were on the brief, for appellees.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Prior to 1936 the laws of South Carolina required that manufacturers, before offering mixed commercial fertilizer for sale, should affix to each container a tag disclosing certain facts concerning the contents. Code of Laws, 1932, §§ 6363–6385. An Act approved April 6, 1936, added to § 6367 the following so-called "Open Formula" amendment, to become effective August 1, 1936.

"(b) The amount and analysis of each material, or source, of each plant food element used in manufacture, of a fertilizer mixture containing two or more plant food elements be stated on a tag attached to each sack or container, such amount of material to be stated in pounds per hundred pounds of mixture contained in the sack or other container. This statement of pounds of materials used in the manufacture of a fertilizer mixture shall be in addition to the statement of chemical analysis as required by Section No. 6366 of the Code of Laws of South Carolina, 1932."

Section 6366 and Section 6367 as amended, are in the margin.[1]

---

[1] SEC. 6366. *Contents of Labels.*—Every person or corporation, before selling or offering for sale in this State any commercial fertilizer or fertilizing material shall brand on each bag or package the brand name of the fertilizer, the weight of the package, the name and address of the manufacturer, and the minimum percentage only guaranteed to be present of available phosphoric acid, of nitrogen (ammonia equivalent), and of potash soluble in water. The items shall be printed on the package in the following order:

Weight of each package.

Brand name or trade-mark.

Guaranteed analysis:

Available phosphoric acid................per cent.

Ammonia equivalent of nitrogen............per cent.

July 22, 1936, before the officers charged with enforcement of statutes relating to fertilizers formulated any rule or instruction regarding the "Open Formula" amendment, and before the Supreme Court had considered or construed it, many manufacturers filed their joint bill in the court below, wherein they alleged the amendment offended the Fourteenth Amendment to the Federal Constitution and asked for an injunction. After answer, testimony was presented by both sides. Three judges heard the cause; found the facts; pointed out a possible construction under which they held the Act would not be arbitrary or oppressive; and dismissed the bill. The matter is here by appeal.

As the enactment has not been construed by the enforcing officers nor interpreted by the Supreme Court

Guaranteed analysis—Continued.
   Potash soluble in water..................per cent.
 Name and address of the manufacturer.

In addition to the above there must be printed on the package, or on a tag attached thereto, the per cent. of water soluble nitrogen (ammonia equivalent), guaranteed, within such limits as the said board of trustees, or a committee thereof, may prescribe. And, in addition, further, it must be stated whether the potash is derived from muriate or sulphate. And, in addition, further, the per cent. of borax or other substance, or substances, injurious to plants must be stated, if in excess of limits prescribed by the board of trustees, or a committee thereof: *Provided,* The said board of trustees, or a committee thereof, shall have power to direct in what manner the branding and labeling shall be done.

SEC. 6367. *Classification of Materials—Labeling—Substitution— Special Contracts—Damages and Penalty.*—(a) The materials used in the manufacture and mixing of all fertilizers supplying nitrogen or ammonia, and offered for sale in this State, shall be divided into two classes, namely, water-soluble and available water-insoluble; and the percentage of nitrogen or ammonia coming from either of these two classes shall be guaranteed, but allowing a variability of one-fourth of one per cent. for goods containing two per cent. of ammonia or under, and a variability of one-third of one per cent for goods containing two and three per cent. ammonia, and a variability of one-

of the State, it is impossible to say what ultimately will be demanded of the complainants. The Court below was of the opinion that, reasonably construed, the Act would be satisfied if the tag upon a given container revealed the general average of the designated items which went into the storage or curing pile of fertilizer at the factory from which such container was filled. "These piles range from 100 tons up to 5,000 tons." This interpretation is, at least, permissible. So construed, we cannot say that the Act is clearly arbitrary, unreasonable and beyond the police power of the State. Apparently it can be complied with without prohibitive expense.[2]

---

half of one per cent. for goods containing over three per cent. ammonia, and the several materials in each of these two classes shall be named on the bag or on a tag attached thereto, and it shall be permissible for the manufacturer to substitute one or more materials in either class of approximately equal agricultural value for other materials of the same class: *Provided:* That where there is a contract of agreement between a manufacturer and a purchaser of fertilizer that the fertilizer will be manufactured by the use of certain definite sources and amounts of ammonia and potash, the fertilizer must be manufactured from these materials without substitution of other materials and failure on the part of the manufacturer to comply with this requirement shall render the manufacturer liable to the purchaser for damages as it is now prescribed by law, and in addition thereto the manufacturer shall pay to the purchaser a penalty equal to one-fourth of the purchase price of such fertilizer.

(b) The amount and analysis of each material, or source, of each plant food element used in manufacture, of a fertilizer mixture containing two or more plant food elements be stated on a tag attached to each sack or container, such amount of material to be stated in pounds per hundred pounds of mixture contained in the sack or other container. This statement of pounds of materials used in the manufacture of a fertilizer mixture shall be in addition to the statement of chemical analysis as required by Section No. 6366 of the Code of Laws of South Carolina, 1932.

[2] Findings of Fact as to Reasonableness of Regulations—No. VI.

"With the foregoing illustration of the application of the requirements of the new law to the actual facts of agriculture, we have no hesitation in finding as a fact that the requirements of the 1936

In response to the assertion that compliance with the "Open Formula" amendment would require complainants to reveal secret formulas and thus unlawfully deprive them of property, it is enough to refer to *Corn Products Refining Co.* v. *Eddy,* 249 U. S. 427, 431–432. "The right of a manufacturer to maintain secrecy as to his compounds and processes must be held subject to the right of the State, in the exercise of its police power and in promotion of fair dealing, to require that the nature of the product be fairly set forth." And the same principle is broad enough to meet the further claim of right to sell products manufactured prior to the passage of the amending Act of 1936.

We find no material error. The challenged decree must be

*Affirmed.*

---

Amendment do most positively tend to meet an actually existing need and to serve the purpose which the Legislature clearly had in mind; namely, to so regulate the fertilizer business as to give the farmer that information which would tend to aid in the carrying on of the major industry of the State of South Carolina."

Findings of Fact as to Information Required by the Act, &c.—No. II.

"The word 'mixture' has under the testimony come to have a rather definite meaning in the fertilizer business. It relates not so much to the finished product in the sack as it does to the actual pile of fertilizer as mixed in the manufacturing plant and left to cure before being finally ground up and put into sacks. The testimony deals fully with the actual processes followed in the mixing of the fertilizer, and the greater weight of the testimony suggests that the average unit of mixture as actually made by the larger fertilizer companies when making a typical fertilizer for sale in large quantities is about five thousand tons. Under the testimony we find that in some cases a strict compliance with the statute will probably call for a large warehouse and the inauguration of a more elaborate system of bookkeeping as to the exact materials put into each mixture but these increased expenses will not be so great as to render the cost of the manufacture of the finished product prohibitive and out of line with the probable increase of prices which the actual trade would bear."