**PUGHE v. PATTON et al.**

No. 3768—1024.

District Court, N. D. Texas, Dallas Division.

Nov. 10, 1937.

Mann, Irion & Mann and Sam McCorkle, all of Dallas, Tex., for complainant.

Guy L. Mann and E. G. Moseley, Asst. Dist. Attys., both of Dallas, Tex., for respondents.

ATWELL, District Judge.

George Walter Pughe, a citizen of California, complains of Andrew Patton, District Attorney of Dallas county, Tex., R. A. Schmidt, Sheriff of the same county, Wil-

liam McCraw, Attorney General of Texas, and James V. Allred, Governor. He says that he has been in the show business for thirty years, and that he is now staging, at various places over the nation, a show known as "George W. Pughe show of 1937." This show consists of a series of acts and exhibitions running through a large part of each day with certain periods of rest, and continues not to exceed eight weeks. That certain couples during that time are engaged in walking, dancing, singing, and performing special numbers. That the remuneration of such couples "consists of whatever coins are tossed to them, or, on the stage for them, by the spectators." That he has produced this particular kind of show for the past ten years in thirty-three American cities. That he has invested in equipment $10,000 for the staging thereof, and has twenty-five people employed at all times. That he desires to present the same in Dallas. That "your complainant, his agents and attorneys have been advised and threatened that if he opened said show in Dallas he will be prosecuted under Article 614b of the penal statutes of the State of Texas [Vernon's Ann. P.C. art. 614b]." That the value and attractiveness of his show depends on its continuity. "That in the past it has been the practice of the district attorney * * * to close any performance or show, which in his * * * opinion violates the terms of the said statute, by securing, instanter, an ex parte restraining order from a state district court, without bond and without the operator having any opportunity whatever to be heard." That such restraints are secured regardless of whether "the operators were actually violating said statute," and, without any notice whatsoever, and without any opportunity for hearing, would cause the sheriff to close and padlock the place where the performance is being held. That after such closing, the time for hearing, at some future date would be fixed, but that the attractiveness to the public "is completely and effectively destroyed" by such interruption. That he believes that such procedure will be followed if he opens his show, and that such belief "is based upon statements made by the district attorney, * * * and upon the fact that he * * * has always and unerringly followed such a course in the past." That such acts and procedure would "amount to a taking of the complainant's property without due process of law, and in violation of the Four-

teenth Amendment to the constitution of the United States."

The complainant claims that the jurisdictional amount is present because his profit will be $25,000. He has already invested $1,000 and has a contract to pay for radio broadcasting in the sum of approximately $2,400. That he has already engaged ten persons for the show, and "many others are in transit." That "he is faced with an amount of daily expense in connection with the staging of the show in excess of $100.00 per day."

The usual show cause order was issued, and at that time the parties agreed to waive application for interlocutory injunction and that the cause could be set down at a later date for final hearing before this court, without the assembling of the statutory three-judge court.

Upon the final hearing, the respondent challenged the jurisdiction of the court because the amount is insufficient and because the complainant was, in May, 1936, enjoined by the state court from engaging in such exhibitions in Dallas. Desiring to be advised on the facts, the court carried in mind these challenges.

The facts disclose that the complainant was enjoined by the state court in May, 1936. He had been carrying on an exhibition for approximately ten weeks when proceedings were instituted against him, and, since he was about ready to close, it was agreed by him and the district attorney that he should be permitted to finish his term of exhibition and then that he should be enjoined from staging another contest of that sort, either at that place, or anywhere else in Dallas. The pleadings in that connection show that the state contended that he was violating this same law. Article 614b, Penal Code of the State of Texas, as amended on May 15, 1937, by the Forty-Fifth Legislature House Bill 483 (Vernon's Ann.P.C.Tex. art. 614b). See Pullen v. Patton et al. (D.C.) 19 F.Supp. 340. He claimed that he was not violating the law.

The testimony, likewise, shows no threats by the district attorney, nor any of the respondents against the complainant. Mr. Irion, counsel for the complainant, testified that he called upon the district attorney and sought to secure from him a statement as to what his attitude would be if the complainant again exhibited in Dallas. That official advised Mr. Irion that it was his duty to enforce the statute, and that he

184

did not consider it appropriate or necessary to say more than that. Substantially to the same effect is the testimony of District Attorney Patton.

There is no clear showing as to threats. The facts with reference to two other cases, not against Pughe, but against Cox and his associates, do seem to justify the statement that ex parte injunctions were secured, and the place being operated was closed thereunder. The state officers claimed that Cox and his associates were running illegal places. The court so found.

I am not satisfied with the testimony, nor the allegations as to the amount in controversy, nor am I satisfied that the threats, which would justify this court in proceeding, were in fact threats, or statements of such dignity as might be so classed.

Pretermitting any discussion of the amount in controversy, it is appropriate to study the complainant's cause against the state officers.

■ The sentiment in both the state and nation is so strong against orders of restraint, without hearing, that it is unnecessary to further elaborate. When an ex parte order of that sort is secured, the respondent against whom it is directed is deprived of that big thing, which all righteous people prize, namely, the right to be heard before being condemned. This does not mean that actions may not arise, rarely, indeed, is my experience, when the chancellor must interpose to prevent imminent destruction of property. But it does mean that if there is no such imminence there should first be a hearing. There is no difference in the recognition of this wisdom in the national and state courts. The law is the same here that it is there. We who sit on the bench, and who appear as counselors, charged with knowing and truthfully presenting the law, must stand by such high points of justice, otherwise, we are hardly worthy priests in these great temples. Still, the proof does not justify the conclusion that the state officers are going to proceed against the complainant in any such high-handed manner. That they so proceeded in two cases against Cox, whose show was illegal, does not mean that they will proceed against the complainant, whose show is legal. The complainant is presumed to be innocent. That presumption is his property and his sufficient cloak in any court, either state or national, until stripped from

him by a legal hearing. There is no indication in the testimony that the district attorney will proceed illegally against the complainant. He has not so told the complainant, nor the complainant's attorneys. The chancellor may not be driven to the extremity of finding against the lawful attitude of a prosecuting officer, because that officer has not seen fit to disclose his attitude beforehand on an exhibition which he has not seen. It would be a dangerous proceeding, as well as poor public policy, to require a prosecuting officer to evidence his position concerning a future act, save to say that he would enforce the law. He could proceed under the 1936 injunction, or by new proceedings, if the offering was within the terms of the injunction, or a violation of the act. But he says he would not proceed unless his investigation of the show offered demanded action.

Since the court is of that opinion, it is not called upon to say whether the show that the complainant describes in his pleading is legal, or illegal. Nor is it incumbent upon the court to pass upon the validity of the state statute. The lack of proof as to incendiary threats of prosecution, and proceedings, made by the respondents, or under their authority, against the complainant, strips the case of equity and demands a dismissal.

Since the argument took a wide range, there are some questions that should be recognized as no longer debatable.

■ (a) Equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments when the prevention of such prosecution is essential to safeguard property rights. Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 258, 68 L.Ed. 596; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255. See, also, Reagan v. Farmers Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Reed v. Lehman (C.C.A.) 91 F.(2d) 919; Tyson & Bro. Ticket Offices v. Banton, 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146; Essman v. Hood (D.C.) 45 F.(2d) 881; Pullen v. Patton et al. (D.C.) 19 F.Supp. 340.

■ (b) This doctrine is siamesed with the principle that, unless this danger of ir-

reparable loss is both great and immediate, the accused should set up his defense in the state court. Fenner v. Boykin, 271 U. S. 240, 46 S.Ct. 492, 70 L.Ed. 927; National Fertilizer Ass'n v. Bradley, 301 U.S. 178, 57 S.Ct. 748, 81 L.Ed. 990; Reed v. Lehman (C.C.A.) 91 F.(2d) 919; Bradford v. Hurt (C.C.A.) 84 F.(2d) 722.

■ (c) It is not sufficient for the basis of a request to enjoin to merely assert the unconstitutionality of the state law. Spielman Motor Company v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322.

■ (d) When the prohibition of section 265 of the Judicial Code (28 U.S.C.A. § 379), against the granting by a federal court, of an injunction to stay proceedings in any court of a state, operates because of a lack of the exceptions which are read into it, it embraces all steps that may be taken in a state court for the harvest of its judgment. Hill v. Martin, 296 U.S. 393, 394, 56 S.Ct. 278, 80 L.Ed. 293. A bill in a state court that has ripened into a final decree, and permanent injunction, may never be said to have come to rest, in the sense that it may be reviewed in a federal court. It is a live proceeding out of which the arm of the chancellor may reach at any time. See, also, Harrison v. Triplex Gold Mines (C.C.A.) 33 F.(2d) 667.

An order dismissing the bill may be drawn evidencing such exceptions as the complainant's counsel desires.