RITHOLZ v. CITY OF DETROIT.

1. CONSTITUTIONAL LAW—RIGHT TO ENGAGE IN BUSINESS.
    The Constitution guarantees to citizens the general right to engage in any business which does not harm the public.

2. SAME—PRESERVATION OF PUBLIC HEALTH, SAFETY, MORALS OR GENERAL WELFARE—FRAUD.
    The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud.

3. SAME—POLICE POWER—RELATION OF REMEDY TO PUBLIC PURPOSE
   MUST BE REASONABLE—JUDICIAL QUESTION.
   In the exercise of the police power there must be not only a
   public welfare to be conserved or public wrong to be corrected,
   but there must be also a reasonable relation between the rem-
   edy adopted and the public purpose and whether such relation
   exists is a question for the courts to determine.

4. SAME—MERCHANDISING—ADVERTISING—DUE PROCESS.
   Since truthful price advertising is a legitimate incident to a
   lawful merchandising business, the deprivation of the right
   so to advertise is a violation of the due process clause (U. S.
   Const. am. 14).

5. SAME—SALE OF EYEGLASSES—PROHIBITION OF ADVERTISING.
   City ordinance prohibiting the advertisement of price of lenses
   or of complete eyeglasses including lenses in connection with
   the sale thereof has no relation to public health, is an unlaw-
   ful interference with private business of selling eyeglasses,
   and unconstitutional (U. S. Const. am. 14; Detroit Ordinance
   No. 288–D).

6. COSTS—CONSTITUTIONAL LAW—PROHIBITION OF ADVERTISING.
   No costs are allowed in suit to determine validity of city ordi-
   nance prohibiting the advertising of price of eyeglasses by
   parties engaged in the sale thereof, a constitutional question
   being involved (U. S. Const. am. 14; Detroit Ordinance
   No. 288–D).

   BUTZEL and BUSHNELL, JJ., dissenting.

Appeal from Wayne; O'Hara (Chester P.), J.
Submitted October 6, 1943. (Docket No. 27, Cal-
endar No. 42,461.) Decided February 24, 1944. Re-
hearing denied April 7, 1944.

Bill by Benjamin D. Ritholz and others against
City of Detroit to restrain the enforcement of an
ordinance. Michigan Association of Opticians, a
Michigan nonprofit corporation, and others inter-
vened as parties defendant. Decree for defendants.
Plaintiffs appeal. Reversed.

*Alvin D. Hersch* and *Paul B. Barak,* for plaintiffs.

*James Walsh,* Assistant Corporation Counsel, for defendant.

*Clark, Klein, Brucker & Waples* (*Slyfield, Hartman, Mercer & Reitz,* of counsel), for interveners.

BUTZEL, J. (*dissenting*).    Plaintiffs own a factory in Chicago and maintain offices or stores throughout the country.    They manufacture and fill orders for eyeglasses and the parts thereof.    They do business in Detroit under the assumed name of National Optical Stores Company.    One of their stores or offices is located in a downtown office building where orders on prescriptions are taken for eyeglasses and frames.    These prescriptions from doctors and optometrists are sent to Chicago to be filled.    The manufactured articles are forwarded to the Detroit office and, from there, delivered to the customer. Plaintiffs advertised the prices charged for the eyeglasses in newspapers, circulars, et cetera.

Controversies with the Better Business Bureau of Detroit arose over plaintiffs' business methods, and, for a time, their advertising was not accepted by the newspapers.    Finally, plaintiffs signed an agreement not to engage any further in unethical business practices.    Shortly thereafter the common council of the city of Detroit passed an ordinance that became effective on November 19, 1942, known as Ordinance 288–D, entitled:

"An ordinance prohibiting misleading statements in advertisements in connection with the sale of eyeglasses, lenses, eyeglass frames and mountings and their supporting accessories; prohibiting advertising of the price of eyeglasses or lenses; regulating advertising of the price of frames and mountings and their supporting accessories; and providing penalties for the violation of the provisions thereof."

Section 2 of the ordinance reads as follows:

"No person, partnership or corporation or agent or employee thereof, engaged in or connected with the sale of eyeglasses, or lenses, shall include in any advertisement, by newspaper, radio, window display, handbill, poster, or any other form of advertising any statement advertising the price of lenses or of complete eyeglasses, including lenses, either with or without professional services; or offer any gift, premium, discount, special price or free eye examination in any such advertisement."

On November 18, 1943, plaintiffs filed a bill to restrain its enforcement. They particularly assail the validity of section 2 of the ordinance claiming that, contrary to both the State and Federal Constitutions, it deprives plaintiffs of the right of free speech and press and takes their property without due process of law. The right to advertise one's merchandise for the purpose of creating public demand and securing trade for the advertiser is, subject to the police power, included in the right to liberty and property. *Packer Corporation* v. *Utah,* 285 U. S. 105 (52 Sup. Ct. 273, 76 L. Ed. 643, 79 A. L. R. 546). Business practices which have no detrimental effect on public health, morals, safety and public welfare may not be prohibited by the legislative body, for such prohibition would result in the deprivation of liberty and property without due process of law. If these practices, however, do have such an effect, they are subject to any regulation as may be necessary for the protection of the public health, morals, safety and general welfare. *People* v. *Victor,* 287 Mich. 506 (124 A. L. R. 316).

At the oral argument of the case, we suggested that plaintiffs might not be entitled to any relief whatsoever if we found that they did not come into court with clean hands. The question, however, was

not raised by defendants and we shall not consider it. However, they did question whether plaintiffs, claiming to be dispensing opticians exclusively, had a right to challenge the constitutionality of the ordinance in regard to its effect on the fitting and sale of eyeglasses over the counter. Nevertheless the trial judge took the broader view and held that the entire ordinance was so related to public welfare, health, morals and safety that it was a valid exercise of police power and he denied plaintiffs any relief. The issue in the case, therefore, resolves itself into whether or not these interests of the public are involved. If they are, the ordinance must be held valid; otherwise, condemned.

While usually it would not be necessary to review the testimony in a case involving the constitutionality of an ordinance, we believe the facts brought out in the instant case fully demonstrate that the ordinance calls for a proper exercise of the police power by the common council of the city of Detroit. Several years ago plaintiffs placed in charge of their Detroit office, located in a downtown building, a manager who previously had been engaged in selling ladies' goods. One of the rooms of this suite rented by plaintiffs was turned over to a doctor of medicine where he conducted his own practice and also performed optometry work for plaintiffs' customers. As patients called at plaintiffs' offices, they were told that a prescription from a doctor was required and they were referred to the doctor in plaintiffs' offices. The prescriptions were left with plaintiffs' manager who had them filled in Chicago and who delivered the glasses to the customers and collected for them. Several years ago the office of the doctor was completely separated from those of plaintiffs by a partition. Although the office still adjoined those of plaintiffs, the only entrance into the doctor's office

was from the hallway.   The record leaves some
doubt as to what the exact relationship was between
the doctor and plaintiffs.   The trial judge who heard
the case characterized the doctor's testimony as
being worthy of little, if any, credence.   The doctor
used the lavatory in plaintiffs' offices to wash his
instruments.   Plaintiffs' manager, on the other hand,
used the doctor's telephone.   The doctor testified that
he paid the manager of plaintiffs' office $12 a month
for the use of the space, and that the manager signed
the receipts for the rent.   The manager denied that
he had received any rent from the doctor but later
upon returning to the witness stand admitted that he
received a sealed envelope from the doctor once a
month and sent it to the Chicago office.   The doctor
testified that he kept a copy of all the prescriptions
that were filled at plaintiffs' Detroit offices.   This
included prescriptions of outside doctors which
patients brought to the plaintiffs.   The office man-
ager wrote upon every prescription the measurement
for the bridge size, the temple length and other data.
The question might arise whether the doctor, acting
as an optometrist, was not associated with the plain-
tiffs in advertising the price of eyeglasses.   How-
ever, the plaintiffs are not being prosecuted under
the optometry act.   See *Seifert* v. *Buhl Optical Co.,*
276 Mich. 692.   The ordinance forbids advertising
the prices of eyeglasses in general.

The record shows that plaintiffs advertised the
sale of eyeglasses for $2.87.   Prospective customers
upon being told that plaintiffs only filled prescrip-
tions usually went to the doctor in the adjoining
office.   The doctor charged and kept a fee of $2 for
his prescription.   This brought the cost of the eye-
glasses up to $4.87.   Plaintiffs did not stop there.
It was shown that the average price exacted from
customers was over $14 for a pair of eyeglasses.

This clearly indicates that the plaintiffs were deceiving the public by misleading price advertising. While they do not deny that the sum of $2 extra was exacted by a third party for a prescription, it is claimed that they were willing to sell eyeglasses for $2.87. An officer of the Better Business Bureau of Detroit testified that when customers called to purchase glasses at the advertised price, they were told that they were the "cheapest form of glasses, that the frames were not satisfactory, as a piece of metal, they would stain their skin about the eye, the nose grip was in one piece, and there was no play to it, and no comfort; in fact, that only a person on the welfare would buy a pair of glasses such as these."

It was further shown that plaintiffs were not the only offenders in such "bait" advertising. Even plaintiffs claimed, and introduced evidence to prove, that when the advertising of prices was stopped, their business showed a very heavy decline. In rebuttal plaintiffs' manager testified that he told customers to go to any physician they pleased for their prescriptions. Plaintiffs also claim that even if they were guilty of fraudulent advertising, there are proper or remedial statutes to stop such practice. See Act No. 328, § 33, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-33, Stat. Ann. § 28.222). One can readily see the practical difficulty of securing conviction for falsely advertising an article offered the prospective customers at an alluring price named in the advertising, when the article is so disparaged by a salesman that the customer becomes unwilling to take it and is persuaded to purchase a much more expensive article. See *Seifert* v. *Buhl Optical Co.*, *supra*, in regard to "bait" advertising.

It was stipulated in the record by all parties that:

"The care of the human eye is important to the health of the individual; that no human eye is like

any other human eye, and that improper lenses or eyeglasses directly affect the condition of the human eye and health.''

Plaintiffs claim, however, that the ordinance was passed in order to benefit their competitors, as is evidenced by the fact that the Michigan Association of Opticians and the Wayne County Association of Optometrists have appeared in the case as intervening defendants and appellees. There is nothing in the record that sustains this claim. The ordinance was regularly passed by the common council of the city of Detroit. The motives of the common council or the members thereof cannot be inquired into for the purpose of determining the validity of its ordinances, *People* v. *Gardner,* 143 Mich. 104; nor may courts on the ground of the unwisdom of a statute depart from their plain meaning. *Village of Kingsford* v. *Cudlip,* 258 Mich. 144. Ultimate decision as to the wisdom of a regulation designed to safeguard the public interest rests with the legislature, *Little* v. *American State Bank of Dearborn,* 263 Mich. 645. There is no showing that the act is either arbitrary or oppressive. The sole question is whether the measures are appropriately related to the purpose and have a tendency to accomplish it. *Parkes* v. *Judge of Recorder's Court,* 236 Mich. 460 (47 A. L. R. 1128).

We agree that it is to the interest of the public to keep the prices of glasses down. There is nothing whatsoever in the ordinance which forbids the sale of glasses as merchandise. Merchants may engage in the sale of optical goods without the aid of optometrists and if they only exact a reasonable price and sell good merchandise, that fact becomes quickly known. It should not be necessary to advertise the price and thus open the door to fraud and deceit that is so amply shown by the facts in this case. It can readily be seen that if advertising the price of eye-

glasses, so necessary to public health, is permitted, others may advertise at a lower price than plaintiffs. The result would be that the public, on account of the very low price, might purchase glasses of poor workmanship and material, equipped with poorly ground lenses and ill-fitting frames. We believe that the ordinance bears such relation to the health, morals, safety and general welfare of the public that its constitutionality cannot be questioned. Our attention has been called to a number of cases. We find the only one in which the precise question was squarely brought before the court was in *Commonwealth* v. *Ferris,* 305 Mass. 233 (25 N. E. [2d] 378), and we quote freely from the opinion of the supreme judicial court of Massachusetts as follows:

"A familiar ground of the regulation or restriction of contracts or of advertising in a commercial business is the prevention of fraud and mistake. Where the public are not cautious or watchful in their buying habits and are likely to be misled, the legislature may require not only the absence of active deception (*Commonwealth* v. *Reilly,* 248 Mass. 1 [142 N. E. 915]), but also affirmative measures to prevent misunderstanding. Of this, reported cases furnish many illustrations. *Commonwealth* v. *Crane,* 162 Mass. 506 (39 N. E. 187) (seller of oleomargarine must give public notice that he sells it). *Commonwealth* v. *Libbey,* 216 Mass. 356 (103 N. E. 923, 49 L. R. A. [N. S.] 879, Ann. Cas. 1915B, 659) (advertisement for laborers must disclose existence of labor disturbance). *Commonwealth* v. *McArthur,* 152 Mass. 522 (25 N. E. 836). *P. F. Petersen Baking Co.* v. *Bryan,* 290 U. S. 570 (54 Sup. Ct. 277, 78 L. Ed. 505, 90 A. L. R. 1285) (bread must be sold in loaves of standard weight). *Armour & Co.* v. *North Dakota,* 240 U. S. 510 (36 Sup. Ct. 440, 60 L. Ed. 771, Ann. Cas. 1916D, 548) (lard must be sold in packages of standard weight). *Pacific States Box & Basket*

*Co.* v. *White,* 296 U. S. 176 (56 Sup. Ct. 159, 80 L. Ed. 138, 101 A. L. R. 853) (berries must be sold in containers of standard size and shape). *Hauge* v. *Chicago,* 299 U. S. 387 (57 Sup. Ct. 241, 81 L. Ed. 297) (coal must be weighed by public weigher). *Corn Products Refining Co.* v. *Eddy,* 249 U. S. 427 (39 Sup. Ct. 325, 63 L. Ed. 689). *National Fertilizer Association, Inc.,* v. *Bradley,* 301 U. S. 178 (57 Sup. Ct. 748, 81 L. Ed. 990) (disclosure of the ingredients of compounds required). *Carolene Products Co.* v. *Harter,* 329 Pa. 49 (197 Atl. 627, 119 A. L. R. 235) (filled milk must be marked 'unfit for infants'). In the recent case of *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187 (23 N. E. [2d] 133), a statute was held constitutional that required every dealer in motor fuel to advertise his prices on the pumps and not elsewhere on his premises.    *    *    *

"The prohibitions against 'advertising lenses or complete eyeglasses including lenses at a fixed price,' and against advertisements laying 'claim to a policy or continuing practice of generally underselling competitors,' may be treated together. They may be sustained as measures in the interest of the public health, an unquestioned ground for the exercise of police power. In *Roschen* v. *Ward,* 279 U. S. 337 (49 Sup. Ct. 336, 73 L. Ed. 722), a statute was held constitutional which forbade the sale of eyeglasses or lenses unless a licensed physician or optometrist should be in charge of and in attendance at the place in the store where they are sold. The plain implication of the decision is that the State has an interest in seeing that the eyesight of its citizens is not impaired by the use of eyeglasses or lenses unskillfully selected, even by themselves; and that, as the court below had declared (*D. S. Kresge Co.* v. *Ottinger,* 29 Fed. [2d] 762, 764), the sale of eyeglasses and lenses might be prohibited unless they should be selected and fitted by competent persons. The statute in that case did not actually go so far, but as Holmes, J., said (279 U. S. at page 339), 'A stat-

ute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce.' Judge A. N. Hand said in the court below (page 764), 'To render an optometrist available wherever eyeglasses are sold is certainly a long step toward correcting existing evils.    *    *    * It seems to us that the inevitable tendency would be for customers to consult him.    *    *    * If the effect of the new requirement should finally be to render the sale of a standardized product unprofitable, so that the customers in the end would not purchase it, but would have their eyes carefully tested and their glasses made according to special prescriptions, it cannot be said that the result might not on the whole be desirable.'

"Gen. Laws, chap. 112, § 72, as amended by Stat. 1926, chap. 321, § 2, forbade anyone not a licensed optometrist to sell 'spectacles, eyeglasses or lenses for the purpose of correcting defective vision.' In *Commonwealth* v. *S. S. Kresge Co.*, 267 Mass. 145, 150 (160 N. E. 558), although the facts showed some assistance by the defendant in determining the kind of eyeglasses required by the customer, it was said that the statute 'deals with the sale to the individual of eyeglasses designed to correct his particular defects of vision,' and that 'it is within legislative competence to determine that scientific and trained adjustment of eyeglasses    *    *    * will be likely to effect a more complete and healthful correction of poor eyesight than the untrained and unaided selection by the customer himself from a mass of eyeglasses.' Apparently the court thought it competent for the legislature to prohibit the business of affording such a selection.    See *United States* v. *Carolene Products Co.*, 304 U. S. 144 (58 Sup. Ct. 778, 82 L. Ed. 1234).

"The legislature evidently was not prepared to prohibit the sale of eyeglasses and lenses as merchandise, to be selected by the buyer. But it was

prepared to discourage it, by eliminating the temptation to and pressure upon customers that result from the assurance that no more than a named price will be charged, or that the price is less than competitors ask. As in *Roschen* v. *Ward,* 279 U. S. 337 (49 Sup. Ct. 336, 73 L. Ed. 722), that shorter step is consistent with the Constitution. It is not unlike the prohibition of the sale of drugs or medicinal compounds by itinerant vendors, sustained in *Baccus* v. *Louisiana,* 232 U. S. 334 (34 Sup. Ct. 439, 58 L. Ed. 627). There may well be reasons of public policy requiring the prohibition of advertising to sell merchandise, the actual sale of which is not forbidden. *Commonwealth* v. *Clapp,* 5 Pick. (22 Mass.) 41. *Commonwealth* v. *Nutting,* 175 Mass. 154 (55 N. E. 895, 78 Am. St. Rep. 483), affirmed *Nutting* v. *Massachusetts,* 183 U. S. 553 (22 Sup. Ct. 238, 46 L. Ed. 324). *Delamater* v. *South Dakota,* 205 U. S. 93 (27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733). *Bothwell* v. *Buckbee, Mears Co.,* 275 U. S. 274 (48 Sup. Ct. 124, 72 L. Ed. 277). *Packer Corp.* v. *Utah,* 285 U. S. 105 (52 Sup. Ct. 273, 76 L. Ed. 643, 79 A. L. R. 546). *State* v. *Hollinshead,* 77 Ore. 473 (151 Pac. 710). *State* v. *J. P. Bass Publishing Co.,* 104 Maine, 288 (71 Atl. 894, 20 L. R. A. [N. S.] 495). The following cases tend to support our conclusion that these prohibitions are constitutional in their application to the advertising of the sale of lenses and complete eyeglasses. *Seifert* v. *Buhl Optical Co.,* 276 Mich. 692, 698. *New Jersey State Board of Optometrists* v. *S. S. Kresge Co.,* 113 N. J. Law, 287, 294 (174 Atl. 353). *State, by Attorney General,* v. *Goodman,* 206 Minn. 203 (288 N. W. 157)."

In coming to our conclusion we have not overlooked the case of *State, ex rel. Booth,* v. *Beck Jewelry Enterprises, Inc.,* 220 Ind. 276 (41 N. E. [2d] 622, 141 A. L. R. 876), stressed by plaintiffs and in which there is some dictum favorable to them. The court, however, had the same question before it that

we were confronted with in *Kindy Opticians, Inc.,* v. *State Board of Examiners in Optometry,* 291 Mich. 152, which it cited. Attention was also called in the opinion to *Ritholz* (evidently the same plaintiffs as in the instant case) v. *Indiana State Board of Registration and Examination in Optometry,* 45 Fed. Supp. 423. In the latter case, the court consisting of one circuit judge and two district judges in a *per curiam* opinion and as a conclusion of law upheld as constitutional and valid the section of the Indiana optometry law forbidding any person or persons to publish or cause to be published any prices for eyeglasses, lenses or frames, et cetera. In *State, ex rel. Booth,* v. *Beck Jewelry Enterprises, Inc., supra,* the court attempted to explain how the Federal court arrived at its conclusion.

Plaintiffs and appellants claim that the ordinance contravenes the State optometry act, 1 Comp. Laws 1929, § 6781 *et seq.* (Stat. Ann. § 14.641 *et seq.*). The State optometry act is limited solely to optometrists (*Kindy Opticians, Inc.,* v. *State Board of Examiners in Optometry,* 291 Mich. 152) and in no way regulates dispensing opticians or merchandisers of eyeglasses. It does not contain either express or implied conditions that are inconsistent or irreconcilable with the ordinance. The cases of *National Amusement Co.* v. *Johnson,* 270 Mich. 613, and *People* v. *McDaniel,* 303 Mich. 90, do not apply.

Justice Sharpe in his accompanying opinion states that the ordinance forbidding the advertising of the price of eyeglasses has no relation to public health and general welfare. The testimony shows that after the prospective customer had secured a prescription, he was told by appellants' agent that the eyeglasses sold at the advertised price were of the cheapest form, would stain the skin about the eye, were unsatisfactory in many respects, and only such

as a person on the welfare would purchase. The advertising of the low price in itself nevertheless would influence many persons to purchase such glasses and thus neglect or impair their eyesight. The advertiser might not be successfully prosecuted for false advertising since he offered glasses at the advertised price. Other manufacturers might not be as frank in disclosing the inferior quality of glasses they sold at the advertised price. All parties concede that improper lenses or eyeglasses directly affect eyesight and health. It is also common knowledge that eyesight, once impaired, as a rule cannot be restored to its former condition. The advertising at a cheap price influences the public, particularly those with lower incomes, to purchase inferior glasses and it thus contributes to the impairment of their eyesight.

I agree that there may be merit in the claim that fixing the price of haircuts in no way directly or indirectly affects the public welfare or health; also that neither does the advertising of the price of health underwear, orthopedic shoes or other articles of clothing affect the public health. The public can readily see or quickly ascertain what they are getting. At most, they lose their money or have some temporary discomfort. The public is amply protected in the purchase of prepared foods, medicines, et cetera, by the food, drug and cosmetic act. 52 Stat. at L. p. 1040, chap. 675 (21 USCA, § 301 *et seq.*). However, in the matter of eyeglasses, the public with eyesight already impaired invariably cannot tell with any degree of certainty whether proper glasses are being furnished or not. The public has a right to be protected against advertising which by the low price named attracts the unwary to purchase inferior glasses.

I believe the correct rule of law is set forth in *Commonwealth* v. *Ferris, supra,* from which we have so fully quoted and which largely relies upon the opinion written by Mr. Justice Holmes in *Roschen* v. *Ward,* 279 U. S. 337 (49 Sup. Ct. 336, 73 L. Ed. 722). The opinion written by Judge Augustus N. Hand in *D. S. Kresge Co.* v. *Ottinger,* 29 Fed. (2d) 762, also is relied upon. On the other hand, Justice Sharpe cites no cases in point. *State, ex rel. Booth,* v. *Beck Jewelry Enterprises, Inc.,* 220 Ind. 276 (41 N. E. [2d] 622, 141 A. L. R. 876), is the only one cited by Justice Sharpe that bears any resemblance and from this only dictum is quoted.

When it comes to selling glasses over the counter without advertising the price, possibly the rule of *caveat emptor* applies, but when the public is lured by a price "bait" to purchase inferior glasses which cause deleterious results, the ordinance that prohibits price advertising has a direct bearing on the health and general welfare.

The decree of the trial court should be affirmed, but without costs, a public question being involved.

Bushnell, J., concurred with Butzel, J.

Sharpe, J. I am unable to accept the reasoning of Mr. Justice Butzel that the ordinance in question "bears such relation to the health, morals, safety and general welfare of the public that its constitutionality cannot be questioned."

In construing the ordinance, I have in mind that there is no claim made that cheap glasses damaging to health were sold or that the sale of a better grade of glasses than advertised had any detrimental effect upon the buyer.

It is to be noted that the ordinance has nothing to do with the regulation of the practice of optometry. Its real purpose is the prevention of false, fraud-

ulent, and misleading advertising of eyeglasses or lenses.

In *Carolene Products Co.* v. *Thomson,* 276 Mich. 172, we said:

"The Constitution guarantees to citizens the general right to engage in any business which does not harm the public. *People, ex rel. Valentine,* v. *Berrien Circuit Judge,* 124 Mich. 664 (50 L. R. A. 493, 83 Am. St. Rep. 352). The constitutional right to engage in business is subject to the sovereign police power of the State to preserve public health, safety, morals or general welfare and prevent fraud. In the exercise of the police power there must be not only a public welfare to be conserved or public wrong to be corrected, but there must be also a reasonable relation between the remedy adopted and the public purpose. 12 C. J. p. 929."

In *People* v. *Snowberger,* 113 Mich. 86 (67 Am. St. Rep. 449), we said:

"Generally, it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of the citizen or interferes with his liberty, it is for the courts to determine whether it relates to and is appropriate to promote such public health."

In *State, ex rel. Booth,* v. *Beck Jewelry Enterprises, Inc.,* 220 Ind. 276 (41 N. E. [2d] 622, 141 A. L. R. 876), the court had before it an alleged violation of the optometry act. A portion of the act made it unlawful "for any person to publish any advertisement which quotes prices on glasses." The court held that this provision applied only to optometrists and not to those who are merely selling eyeglasses. The case does not decide whether such advertising by a merchant would be unlawful as that question was not in

issue. The court, however, expressed its views upon this question in a manner that I am in accord with; it said:

"To forbid price advertising by an optometrist is regulation of his practice. But to forbid price advertising by appellees is merely regulation of their merchandising. * * *

"Truthful price advertising is a legitimate incident to a lawful merchandising business. Deprivation of the right so to advertise has been held to violate the due process clause of the Fourteenth Amendment. * * * We cannot assume that the legislature intended to permit the sale of eyeglasses as merchandise but to deprive the dealer of one of the reasonable and lawful means of procuring purchasers for such merchandise."

The case of *Jones* v. *Bontempo,* 137 Ohio St. 634 (32 N. E. [2d] 17), was an action against the State board of barber examiners to set aside, vacate or modify an order suspending plaintiff's license certificate as a barber. The board revoked plaintiff's certificate because he advertised on the window of his shop: "Haircutting twenty-five cents" contrary to an act establishing the State board of barber examiners. The court there said:

"The trade of barbering, operating as it does directly on the person of the customer, affects the health, comfort and safety of the public and may be regulated within reasonable limits by the legislative branch of the government under that power known as the police power, 'conceded to reside in the people's representatives, which is rightfully exercised by the regulation of the use of private property, or so restraining personal action, as to secure, or tend to the comfort, health, or protection of the community.' *State* v. *Gardner,* 58 Ohio St. 599, 606

(51 N. E. 136, 65 Am. St. Rep. 785, 41 L. R. A. 689). See, also, 8 Ohio Jur. p. 334, § 229; 11 Am. Jur. p. 972, § 247.

"Therefore, those engaged in the occupation of barbering or those desiring to pursue that business may be examined as to their competency and fitness and are subject to supervision and control in the matters of cleanliness, sanitation, conduct, habits, infectious and contagious diseases, and things of that kind. * * *

"How the mere advertising of the price of haircuts as done by the plaintiff could in any wise affect public health or welfare is difficult to understand.

"If this legislation, absolutely prohibiting the advertising of prices of barber services, were to be upheld, it would likewise be necessary to uphold legislation, prohibiting the vendors of groceries, meats or other commodities from advertising prices thereof in any manner, the unreasonableness of which is at once apparent.

"This court is unanimously of the opinion that the particular legislation complained of in this case unduly interferes with the constitutional prerogatives of plaintiff as to freedom of action, speech and property rights."

In my opinion the evil sought to be corrected by the ordinance is a business evil. The ordinance has no relation to public health and is an unlawful interference with private business. It is void as being in violation of the Fourteenth amendment of the United States Constitution.

The decree of the trial court is reversed, without costs as a constitutional question is involved.

NORTH, C. J., and STARR, WIEST, and BOYLES, JJ., concurred with SHARPE, J. REID, J., took no part in the decision of this case.