CONSUMER MAIL ORDER ASS'N OF AMERICA et al. v. McGRATH, Attorney General.

Civ. A. No. 1560–50.

United States District Court
District of Columbia.

Argued Oct. 2, 1950.

Decided Nov. 30, 1950.

See 71 S.Ct. 500.

FAHY, Circuit Judge.

The plaintiff Consumer Mail Order Association of America is in the nature of a trade association to which the other plaintiffs belong. The latter allege that they are engaged exclusively in the business of selling cigarettes in interstate commerce. They sue J. Howard McGrath, individually and as Attorney General of the United States, for a declaratory judgment that the Act of Congress of October 19, 1949, known as the Jenkins Act,[1] is unconstitutional and for an injunction against its enforcement. The Act requires that any person selling or disposing of cigarettes in interstate commerce, whereby the cigarettes are shipped to other than a distributor licensed by or located in a state taxing the sale or use of cigarettes, shall each month forward to the tobacco tax administrator of the state into which such shipment is made certain information, including the name and address of the person to whom the shipment was made and the brand and the quantity of the cigarettes shipped. Violation of the Act is a misdemeanor punishable by fine of not more than $1,000, or imprisonment of not more than six months, or both.

Plaintiffs filed a motion for an injunction *pendente lite,* supported by affidavits.

Arnold, Fortas & Porter, Washington, D. C., for plaintiffs.

James M. McInerney, Asst. Atty. Gen., and George Morris Fay, U. S. Atty., and Vincent A. Kleinfeld, Attorney, Department of Justice, Washington, D. C., for defendant.

Before FAHY, Circuit Judge, and McLAUGHLIN and MATTHEWS, District Judges.

1. "AN ACT
"To assist States in collecting sales and use taxes on cigarettes.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That as used in this Act the term—

"(a) 'person' means any individual, partnership, corporation, or association;

"(b) 'disposing of' means any transfer for profit;

"(c) 'cigarette' means any roll for smoking made wholly or in part of tobacco, irrespective of size or shape and whether or not such tobacco is flavored, adulterated, or mixed with any other ingredient, the wrapper or cover of which is made of paper or any other substance or material except tobacco;

"(d) 'licensed distributor' means any person authorized by State statute or regulation to distribute cigarettes at wholesale or retail;

"(e) 'use', in addition to its ordinary meaning, means the consumption, storage, handling, or disposal of cigarettes;

"(f) 'tobacco tax administrator' means the State official duly authorized to administer the cigarette tax law of a State.

"Sec. 2. Any person selling or disposing of cigarettes in interstate commerce whereby such cigarettes are shipped to other than a distributor licensed by or located in a State taxing the sale or use of cigarettes shall, not later than the 10th day of each month, forward to the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every such shipment of cigarettes made during the previous calendar month into said State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

"Sec. 3. Whoever violates the provisions of this Act shall be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than six months, or both. Approved October 19, 1949." Public Law 363, 81st Cong., 15 U.S.C.A. § 375 et seq.

Defendant filed an opposition, supported by an affidavit. He also moved to dismiss on the ground the court lacked jurisdiction over the subject matter and the complaint failed to state a claim upon which relief could be granted. A three-judge district court was convened pursuant to 28 U.S.C.A. § 2284.

The parties stipulated that the case be considered as submitted within the terms of Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. This rule provides that when on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, with reasonable opportunity to all parties to present all material made pertinent to such motion by Rule 56. It was stipulated further that the submission of the case included a motion for summary judgment by plaintiffs as well as by the defendant. The court has not excluded the affidavits presented and has granted reasonable opportunity to the parties to present any further material desired. This period having expired, the court, as stipulated, considers the case submitted on motion of the plaintiffs and of the defendant for summary judgment in accordance with Rule 12(b) read with Rule 56.

## I.

It is urged at the outset that judgment of dismissal should be awarded defendant on the ground there is no case or controversy within the judicial power conferred by Article III, § 2 of the Constitution; that only an abstract legal question as to the validity of the Jenkins Act is involved, with no actual dispute between the parties, or any of them, which impinges closely enough upon conduct to raise a justiciable controversy. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, is relied upon. A case or controversy in a constitutional sense is more than an intellectual difference of opinion about the validity of a statute. The difference must affect conduct or rights in a near and real sense. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826. No such controversy appears to us to exist between the plaintiff Consumer Mail Order Association of America and the defendant. The regulations of the Jenkins Act do not apply to the Association. Their effect on it, indirectly through their effect on its members, does not meet the test of a case or controversy of a justiciable character between this plaintiff and the defendant. As to each of the other plaintiffs, however, the impact of the statute and of the decision of the Attorney General to enforce it has immediate and substantial effect upon their conduct. They engage in the very business specifically regulated by the Act—the interstate shipment of cigarettes to consumers in the states to which the shipments are made. The requirements of the Act adversely affect their sales. The pleadings and affidavits demonstrate that the defendant has undertaken the enforcement of the statute. An indictment has been returned against the plaintiff Wilson, at the instance of the defendant. Investigations of other plaintiffs are under way. Controversies of a serious kind exist between these plaintiffs and the defendant bearing directly upon the conduct of the former and upon rights asserted by them with respect to the business in which they are engaged. Some of these plaintiffs, believing the Act to be unconstitutional, are violating it, while others, fearful of the consequence of violation, are restricting their operations, regulated by the Act, until the issue of constitutionality is settled. All these plaintiffs are among those whom the defendant seeks to bring into conformity with the statute. Such differences with defendant are not abstract, as in Helco Products v. McNutt, 78 U.S. App.D.C. 71, 137 F.2d 681, 149 A.L.R. 345, and Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461, 462, 65 S.Ct. 1384, 89 L.Ed. 1725. These plaintiffs may invoke our decision as to whether they state a cause of action and whether they are entitled to relief. United Public Workers of

America v. Mitchell, 330 U.S. 75, at pages 89, 90, 91, 67 S.Ct. 556, 91 L.Ed. 754.

## II.

The relief sought is a declaratory judgment and an injunction to prevent enforcement of the Act. Concluding as hereinafter set forth that the Act is valid, we need not consider whether a court of equity would enjoin enforcement if it were concluded the Act were invalid. United Public Workers v. Mitchell, 330 U.S. 75, at page 93, 67 S.Ct. 556, 91 L.Ed. 754. The Act being constitutional, equitable relief by injunction must be denied in any event. But we think it is within our discretion under the Declaratory Judgment Act to decide the constitutional question, as was done in United Public Workers v. Mitchell, 330 U.S. at pages 93-94, 67 S.Ct. 556, 91 L.Ed. 754, at the instance of the plaintiff Poole therein. Were Wilson alone involved, we would feel impelled otherwise. He is in a position to raise all pertinent questions in the criminal proceedings pending against him in Louisiana. Our discretion to declare his rights should not be exercised in the present action. But his co-plaintiffs, other than the Association, do not now have like opportunity, however unwelcome its character. Yet they are either violating the Act by not forwarding the information prescribed by it, or are complying and thereby suffering serious loss of sales, or, as in the case of several plaintiffs, are, under the pressure of the situation, restricting their sales to customers in states without a tax on the sale or use of cigarettes. Our discretion, Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620, we think should be exercised to determine the issue of the validity of the Act so that these parties will know their rights in so far as our decision will enlighten them.

## III.

We find no constitutional infirmity in the Jenkins Act. By its terms it applies to "Any person selling or disposing of cigarettes in interstate commerce whereby such cigarettes are shipped to other than a distributor licensed by or located in a State taxing the sale or use of cigarettes * *." It prescribes a requirement of forwarding certain information in connection with carrying on this particular kind of interstate commerce. Unless this requirement is itself subject to some constitutional defect such as arbitrariness, with consequent invalidity under the Due Process Clause of the Fifth Amendment, the regulation is a valid exercise of the federal commerce power. Congress may prescribe the "rule by which commerce is to be governed." Gibbons v. Ogden, 9 Wheat., U.S., 1, 196. 6 L.Ed. 23. The breadth of the power has been frequently expounded by the Supreme Court in recent years. See, for example, Wickard v. Filburn, 317 U.S. 111, where at page 120, 63 S.Ct. 82, at page 87, 87 L.Ed. 122, it is said: "At the beginning Chief Justice Marshall described the federal commerce power with a breadth never yet exceeded. Gibbons v. Ogden, 9 Wheat. [U.S.] 1, 194, 195 [6 L.Ed. 23]. He made emphatic the embracing and penetrating nature of this power by warning that effective restraints on its exercise must proceed from political rather than from judicial processes. Id. at 197 [9 Wheat. U.S., at page 197, 6 L.Ed. 23]."

The discussion ten years ago in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, overruling Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, states the power in broad terms not since questioned. There the power was exercised to carry out a Congressional policy that "interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions, which competition is injurious to the commerce and to the states from and to which the commerce flows." 312 U.S. at page 115, 61 S.Ct. at page 457, 85 L.Ed. 609. "* * * Whatever their motive and purpose, regulations of commerce which do not infringe some constitutional prohibition are within the plenary power conferred on Congress by the Commerce Clause." Id. "* * * the prohibition of the shipment interstate of goods produced under the forbidden substandard labor conditions is

within the constitutional authority of Congress." Id. In the case at bar the requirement of reports as to certain interstate shipments of cigarettes stands in no less secure constitutional basis. It is true the title of the statute does not refer to it as a regulation of interstate or foreign commerce. It reads, "To assist States in collecting sales and use taxes on cigarettes." But the substantive provisions attach expressly to interstate shipments; and the purpose to assist states as indicated in no manner makes the regulation illegal. The reports are required to be forwarded only to the tobacco tax administrator of the state into which a shipment is made to other than a distributor licensed by or located in a state taxing the sale or use of cigarettes. The information thus has to do with sales made directly to consumers and accordingly is related to the collection of taxes. This well might assist the taxing authorities to prevent resales without payment of tax, or in other respects. The use of the commerce power to aid the several states in this manner is valid. Aside from the fact that the "motive and purpose of a regulation of interstate commerce are matters for the legislative judgment upon the exercise of which the Constitution places no restriction and over which the courts are given no control", United States v. Darby, supra, 312 U.S. at page 115, 61 S.Ct. at page 457, 85 L.Ed. 609, "Such regulation is not a forbidden invasion of state power merely because either its motive or its consequence is to restrict the use of articles of commerce within the states of destination; * * *." Id., 312 U.S. at page 114, 61 S.Ct. at page 457, 85 L.Ed. 609.

A detailed review of validity of the exercise of the federal commerce power in aid of state law and policy is contained in Kentucky Whip & Collar Co. v. Illinois Central R. R. Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270, sustaining the Act of July 24, 1935, known as the Ashurst-Sumners Act, 49 Stat. 494, which made it unlawful knowingly to transport in interstate or foreign commerce goods made by convict labor into any state where the goods were intended to be received or used in violation of its laws. "The fact that it [Congress] has adopted its rule in order to aid the enforcement of valid state laws affords no ground for constitutional objection." 299 U.S. at page 352, 57 S.Ct. at page 283, 81 L.Ed. 270. See, also, James Clark Distilling Co. v. Western Maryland Ry. Co., 242 U.S. 311, 323, 37 S.Ct. 180, 61 L.Ed. 326; Lottery Case (Champion v. Ames) 188 U.S. 321, 353, 23 S.Ct. 321, 47 L.Ed. 492; Weber v. Freed, 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308.

As was said by the Circuit Court of Appeals for the Fifth Circuit, in Griswold v. President of the United States, 82 F.2d 922, 923, in discussing the Connally Act of February 22, 1935, 15 U.S.C.A., §§ 715–715l, prohibiting the shipment in interstate commerce of oil produced in violation of state law, "the act, though passed in aid of state purposes and powers, deals with, and only with, commerce interstate", citing James Clark Distilling Co. v. Western Maryland Ry., 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326; Whitfield v. Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778; Bogle v. White, 5 Cir., 61 F.2d 930; Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699. See, to like effect, President of the United States v. Artex Refineries Sales Corp., D.C. S. D. Texas, 11 F.Supp. 189.

It is no answer that some of the state laws taxing the sale or use of cigarettes might not be valid. There is nothing inherently invalid in such laws. The complaint seeks a declaration that the statute is unconstitutional without regard to its particular application to a particular state. We need not, in this general attack upon the Act, go further than to point out that state policy in this area of taxation may validly be the basis for federal regulation of interstate sales or shipments. Even assuming the invalidity of some existing state laws taxing the sale or use of cigarettes, a matter we do not decide, the validity of the federal law remains unaffected, because it has the purpose of aiding generally in the effectuation of valid state policy. It is not necessary to consider the question of the use of federal legislative authority to aid a

state purpose or policy of a general invalid character. For reasons deemed sufficient to Congress, set forth in Sen. R. No. 644, 81st Cong., 1st Sess., pp. 1-2, it has undertaken the present means of assisting the states in their tobacco tax policy, the general validity of which is not in question. It cannot be presumed, Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 430, 66 S.Ct. 1142, 90 L.Ed. 1342; Weber v. Freed, 239 U.S. 325, 329, 330, 36 S.Ct. 131, 60 L.Ed. 308, that Congress was attempting to enforce invalid state law or to aid in an unconstitutional application of valid laws.

## IV.

The constitutionality of the Act is also attacked as a violation of the Due Process Clause of the Fifth Amendment. It is asserted (1) that the purpose of the Act is not to regulate interstate commerce but to aid the states in the enforcement of invalid laws which will destroy plaintiffs' businesses; (2) that the Act, in requiring the disclosure of plaintiffs' mail-order customers, arbitrarily destroys the property value of plaintiffs' customer lists; (3) that the Act discriminates against cigarettes as a legitimate article of commerce; and (4) that the Act forces a resident of one state to submit to the judisdiction of a second state.

(1) The first of these contentions has already been discussed under Part III, supra.

(2) While it is beyond dispute that the exercise of the commerce power by Congress is subject to the requirements of the Fifth Amendment, Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441, those requirements are generally satisfied where the means of the regulation of commerce are appropriate to a permissible end. Virginia Ry. Co. v. System Fed. No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. "Even if the prohibition imposed in the exercise of the commerce power results in the destruction of property rights * * * there is no deprivation in violation of the due process clause of the Fifth Amendment unless the regulation imposed is unreasonable." Wallace v. Hudson-

Duncan & Co., 9 Cir., 98 F.2d 985, 991. Here, the Jenkins Act does not require the full disclosure of the plaintiffs' customer lists to anyone. The taxing authorities of each state receive only the names of those customers who are residing within the state's borders. There is no showing that plaintiffs will be harmed by the disclosure of these segmental lists to competitors. In these circumstances it cannot be said that the requirement is unreasonable or inappropriate to the permissible end of Congress to prevent the use of the facilities of interstate commerce in evading or violating state laws. The right of a mail-order concern operating in interstate commerce to maintain the absolute secrecy of its customer list is subject to the right of Congress, in the exercise of its commerce power, to require the partial disclosure of that list to state authorities. In Utah Fuel Co. v. National Bituminous Coal Comm., 306 U.S. 56, 59 S.Ct. 409, 412, 83 L.Ed. 483, the Supreme Court sustained the power of Congress to go even further in the exercise of its commerce power by requiring the submission of detailed business information and by authorizing its disclosure to a group among whom were competitors of the informant. The Court there stated, "* * * Obviously publication may be harmful to petitioners, but as Congress had adequate power to authorize it and has used language adequate thereto we can find here no sufficient basis for an injunction." Similarly, in National Fertilizer Ass'n v. Bradley, 301 U.S. 178, 57 S.Ct. 748, 81 L. Ed. 990, it was held that due process was not violated by requiring the disclosure of the amount and analysis of each material used in the manufacture of a fertilizer compound, even though compliance would force the manufacturer to reveal secret formulas. While the disclosure there was required by state law and involved the Fourteenth Amendment, it is clear that the Fifth Amendment does not impose greater restraints upon the power of Congress in this respect. Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772; Bowles v. Willingham, 321 U.S. 503, 518, 64 S.Ct. 641, 88 L.Ed. 892; Prudential Ins.

Co. v. Benjamin, 328 U.S. 408, 438, 66 S. Ct. 1142, 90 L.Ed. 1342.

(3) It is said that the Act discriminates against cigarettes as a legitimate article of commerce in that other goods, and particularly other forms of tobacco, are left free from regulation. But the "Fifth Amendment does not require full and uniform exercise of the commerce power. Congress may weigh relative needs and restrict the application of a legislative policy to less than the entire field." Mabee v. White Plains Pub. Co., 327 U.S. 178, 184, 66 S.Ct. 511, 514, 90 L.Ed. 607. Similarly, in Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, a commerce regulation was sustained against a charge of discrimination where those who were subject to regulation were determined not only by the kind of commodity in which they dealt but also by the amount they handled. The present regulation does not go so far.

(4) Finally, as to the contention that the Act forces a resident of one state to submit to the jurisdiction of a second state, it is the power of Congress, not of any state, which requires the information to be submitted. The Act imposes a condition upon the use of the facilities of interstate commerce, and neither obedience nor violation of that condition subjects the plaintiffs to the authority of any state. That the condition is imposed in order to cooperate with the power of the states to tax does not change the situation. "* * They [Congress and the states] were not forbidden to cooperate or by doing so to achieve legislative consequences, particularly in the great fields of regulating commerce and taxation, which, to some extent at least, neither could accomplish in isolated exertion." Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 439, 66 S.Ct. 1142, 1160, 90 L.Ed. 1342.

For the reasons stated with respect to the several plaintiffs, judgment is granted for the defendant and the complaint accordingly is

Dismissed.