UNITED STATES of America, Plaintiff-Appellee,

v.

James D. MELVIN, Gregory Allan Conner, Robert Pierce, and Carson Robert Yeager, Defendants-Appellants.

No. 75–3330.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1977.

Edward J. David, Fayetteville, N. C., for defendants-appellants.

Robert W. Rust, U. S. Atty., William R. Northcutt, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Defendants Melvin, Conner, Pierce and Yeager appeal from their convictions for conspiracy to violate, and violation of, the mail fraud statute, 18 U.S.C.A. §§ 371,[1]

---

1. Title 18 U.S.C.A. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

1341,[2] which makes unlawful any scheme to defraud in which the mails are employed in some significant way in carrying out the scheme. Violation is a felony. These convictions were based on defendants' use of

2. 18 U.S.C.A. § 1341 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

3. The Jenkins Act.

§ 376. *Reports to State tobacco tax administrator; contents; presumptive evidence*

(a) Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall—

(1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

(2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

(b) The fact that any person ships or delivers for shipment any cigarettes shall, if such shipment is into a State in which such person has filed a statement with the tobacco tax administrator under subsection (a)(1) of this section, be presumptive evidence (1) that such cigarettes were sold, or transferred for profit, by such person, and (2) that such sale or transfer was to other than a distributor licensed by or located in such State. Oct. 19, 1949, c. 699, § 2, 63 Stat. 884; Aug. 15, 1953, c. 512, Title II, § 201(a), 67 Stat. 617; Aug. 9, 1955, c. 695, § 1, 69 Stat. 627.

\* \* \* \* \* \*

§ 377. *Penalties*

Whoever violates any provision of this chapter shall be guilty of a misdemeanor and shall be fined not more than $1,000, or imprisoned not more than 6 months, or both. Oct. 19, 1949, c. 699, § 3, 63 Stat. 885; Aug. 9, 1955, c. 695, § 1, 69 Stat. 628.

\* \* \* \* \* \*

§ 378. *Jurisdiction to prevent and restrain violations*

The United States district courts shall have jurisdiction to prevent and restrain violations of this chapter. Oct. 19, 1949, c. 699, § 4, as added Aug. 9, 1955, c. 695, § 1, 69 Stat. 628.

\* \* \* \* \* \*

The concern of the Federal Government for the loss of tax revenue to the states is reflected by the following in the legislative history of the Jenkins Act.

\* \* \* \* \* \*

"The [Jenkins Act] was enacted for three major reasons:

"(1) The large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce to consumers;

"(2) The discrimination caused by this evasion against sellers of cigarettes in States having a higher tax than the tax of the seller States; and

"(3) The fact that this evasion was accomplished through the use of the United States mail."

S.Rep.No.1147, 84th Cong., 1st Sess., U.S. Code Cong. and Admin.News p. 2883 (1955), quoting from the report of the Committee on Ways and Means.

\* \* \* \* \* \*

"[C]ertain individuals and organizations are using the United States mails to circumvent State laws. Moreover, advertisements of organizations specializing in this business cite the availability and use of the United States mails as proof of legality of their operations. Accordingly, your committee believes that respect for the laws of the sovereign States will be furthered by the passage of this bill and that the public interest will be

the mails to ship cigarettes interstate into states imposing a cigarette sales or use tax without complying with the Jenkins Act, 15 U.S.C.A. § 376 et seq.[3] The Jenkins Act requires the seller of cigarettes in interstate

commerce to register with the tax officials of states where he advertises or into which he ships cigarettes and to furnish copies of invoices disclosing the purchasers' names and addresses. Violation is a misdemeanor.

Defendants argue that the District Court erred (i) in upholding the sufficiency of the indictment; (ii) in failing to instruct the jury on the Jenkins Act as a lesser included offense; (iii) in failing to instruct the jury on an allegedly pertinent state law; (iv) in failing to direct a judgment of acquittal on the ground that the evidence did not support a conviction for violation of the mail fraud statute, even though it might support a conviction for violation of the Jenkins Act; (v) in admitting certain hearsay evidence (the Negative Jenkins Act Reports);[4] (vi) in committing errors in sentencing; (vii) in failing to strike down the Jenkins Act as unconstitutional; (viii) in allowing certain allegedly improper remarks to be

made by the prosecutor; and (ix) in supposedly misleading the defendant by making certain comments regarding the Court's doubts as to the applicability of the mail fraud statute. We hold that the activities of the defendants suffice to sustain a conviction for mail fraud. In addition, we reject the attack on the sufficiency of the evidence to support the mail fraud conviction, and hold that criminal liability is not limited to the misdemeanor offense of the Jenkins Act. We also hold that the admission of the so-called Negative Jenkins Act Reports was, at most, harmless error. Finally, we find that the rest of the assignments of error in defendants' blunderbuss attack are completely lacking in merit. We affirm.

### The Indictment

The four defendants, Melvin, Conner, Pierce and Yeager were indicted on seventeen counts.[5] Count I charged the four

---

served by eliminating any inference that the Federal Government approves of the circumventing of State laws." S.Rep.No.644, 81st Cong., 1st Sess., U.S.Code Cong.Serv. pp. 2158, 2159–60 (1949).

4. See discussion at 772, infra.

5. The indictments are summarized below.
*Count I of the Indictment*
*Offense charged:* Conspiracy to violate 18 U.S.C.A. § 1341.
*Defendants charged:* Melvin, Conner, Pierce, and Yeager.
*The Goals of the Conspiracy:*
  (i) To advertise, sell and transfer cigarettes for profit in interstate commerce by mail from North Carolina to Florida (where the sale to others than licensed dealers and use of cigarettes is more heavily taxed than in North Carolina), without filing with the State of Florida a complete statement setting forth the names and addresses of the people who were buying the cigarettes and without filing a complete memorandum setting forth the names and addresses of the persons to whom shipments were made.
  (ii) To distribute advertisements, circulars and mail order forms which contained false and fraudulent representations and promises (by implication and omission) that the cigarettes would be purchased by persons in Florida through the mails at a substantial savings over the local

price without subjecting the purchasers to the Florida cigarette tax.
  (iii) To defraud the State of Florida out of substantial tax revenue by not revealing to the Florida authorities a complete list of names and addresses of persons in Florida who had purchased cigarettes, and thus preventing the State of Florida from collecting the appropriate cigarette excise and other taxes.
  (iv) To receive through the use of the United States mails at Post Office Box 62, Fayetteville, North Carolina, checks which were used for the purchase of cigarettes by Florida buyers, said checks having been placed in the United States mail in the Southern District of Florida.
*Overt Acts in Furtherance of the Conspiracy in Violation of*
*18 U.S.C.A. § 371:* On each of the dates set forth below, the defendants named below used the United States mails to ship cigarettes from Fayetteville, North Carolina, to persons located in Florida—
  (i) June 16, 1972—Melvin and Conner
  (ii) June 24, 1976—Melvin and Conner
  (iii) March 16, 1973—Melvin and Conner
  (iv) April 19, 1973—Melvin, Conner and Yeager
  (v) April 18, 1973—Melvin, Conner and Yeager
  (vi) November 19, 1973—Melvin, Conner and Yeager
  (vii) September 2, 1974—Melvin, Pierce and Yeager

defendants with conspiracy to violate the mail fraud statute, 18 U.S.C.A. § 371. Counts II through XVII charged them, in various combinations, with violations of the mail fraud statute, 18 U.S.C.A. § 1341.

## The Trial

Defendant Melvin rented Post Office Box 62, at Fayetteville, North Carolina on July 2, 1969, giving his retail address as the Sunoco Service Center (Sunoco).[6] Within three years, defendant Conner, a part-time General Manager[7] for Melvin between 1969 and 1975, rented Box 62 in his name, giving Cigarette Sales as the retail address.

The main enterprise of Sunoco was selling gasoline and cigarettes. When customers, some from Florida, would come into the station to purchase gasoline or cigarettes, the employees were instructed to give the customers a cigarette mail order form[8] which would be mailed back to Post Office Box 62. These order blanks stated at the top that all Federal and North Carolina taxes had been paid. The forms were later mailed by the out-of-state purchasers with a check.

In response to these orders, Melvin, Pierce and Yeager would collect the cigarettes necessary to fill the orders and would then transport them[9] to another location in

(viii) January 22, 1975—Melvin, Conner and Pierce
(letter containing cigarette order blank).
    *Count II of the Indictment*
*Offense Charged:* Violation of 18 U.S.C.A. § 1341.
*Defendants Charged:* Melvin, Conner, Pierce and Yeager.
*The Goals of the Scheme and the Acts Constituting the Scheme:*
(i) Essentially the same as the acts charged in the conspiracy violation above.
(ii) Used Post Office Box 62 at Fayetteville, North Carolina, as part of their scheme to defraud.
(iii) On or about June 6, 1972, Melvin and Conner, for the purpose of executing the scheme, knowingly caused to be placed in the United States mail a letter containing a check for $13.00 payable to Cigarette Sales, which check was sent to Post Office Box 62, Fayetteville, from one of the Florida buyers.
*Counts III Through XVII of the Indictment*
*Offense Charged:* Violation of 18 U.S.C.A. § 1341.
*Defendants Charged: Melvin, Conner Pierce and Yeager.*
*The Goals of the Scheme and the Acts Constituting the Scheme:*
(i) The same as in Count II, *supra,* except for the omission of point (iii) of that Count.
(ii) In place of point (iii) of Count II, each of the other Counts alleges either the delivery of a check to defendants in payment for illegal shipments of cigarettes or the shipment of cigarettes from Fayetteville, North Carolina to persons in Florida, all in violation of 18 U.S.C.A. § 1341:
    Count III: June 16, 1972—Melvin and Conner (shipment of cigarettes)
    Count IV: June 14, 1972—Melvin and Conner (check delivery)

    Count V: June 24, 1972—Melvin and Conner (shipment of cigarettes)
    Count VI: March 6, 1973—Melvin and Conner (check delivery)
    Count VII: April 9, 1973—Melvin and Conner (shipment of cigarettes)
    Count VIII: April 9, 1973—Melvin, Conner and Yeager (check delivery)
    Count IX: April 19, 1973—Melvin, Conner and Yeager (shipment of cigarettes)
    Count X: April 8, 1973—Melvin, Conner and Yeager (check delivery)
    Count XI: April 18, 1973—Melvin, Conner and Yeager (shipment of cigarettes)
    Count XII: November 9, 1973—Melvin, Pierce and Yeager (check delivery)
    Count XIII: November 19, 1973—Melvin, Pierce and Yeager (shipment of cigarettes)
    Count XIV: August 20, 1974—Melvin, Pierce and Yeager (check delivery)
    Count XV: September 2, 1974—Melvin, Pierce and Yeager (shipment of cigarettes)
    Count XVI: October 14, 1974—Melvin, Pierce and Yeager (check delivery)
    Count XVII: October 31, 1974—Melvin, Pierce and Yeager (shipment of cigarettes)

6. Melvin also operated another retail business, Cigarette Sales, at the same address.

7. Defendant Yeager was another part-time General Manager for Melvin from 1972 through 1975.

8. During trial, there was some testimony that some customers received these order forms in the mail completely unsolicited.

9. Yeager usually transported the cigarettes.

North Carolina for further wrapping, packaging and processing. After this further processing, they would then be mailed to the out-of-state customers, including those in Florida.

At the trial, seven witnesses who lived in Florida testified that they had purchased cigarettes in this manner and their checks were introduced into evidence. Each of the witnesses said he was not a licensed distributor,[10] and had purchased the cigarettes using order forms provided by the company or friends. Each stated in effect that with respect to such purchases they did not know there was a Florida tax and if they had known of the tax they would not have purchased the cigarettes.[11]

None of these witnesses were reported by defendants on any Jenkins Act report. As a part of its showing that defendants were not making an honest effort to comply with the Jenkins Act, the government put on one witness who testified that he was reported by Cigarette Sales on a Jenkins Act list as a purchaser of cigarettes by mail, although he does not smoke and never had ordered any cigarettes from this company.

The Government also introduced some Negative Jenkins Act responses. These were letters from individuals to the Florida Department of Beverages stating that they had been reported by Cigarette Sales as purchasers under the Jenkins Act, even though they had never ordered or purchased the cigarettes and therefore owed no tax.

The testimony revealed that from 1969 until 1974, the defendants almost totally failed to report under the Jenkins Act. Melvin, confronted by an FBI investigator in 1972 and asked whether he was aware of the Jenkins Act, replied in the affirmative. The FBI agent was also allowed to testify (for the limited purpose of showing knowledge and intent) that Melvin and Pierce had been convicted for Jenkins Act violations in other states in 1973.

In late 1974, after much prodding by Florida authorities, Sunoco began to report the names of its customers as required by the Jenkins Act. However, only some of the customers were reported in fact, and other names given were sometimes fictitious.

The defendants moved for a Judgment of Acquittal after the prosecution rested, but that motion was denied [12] and the case went to the jury, which subsequently convicted the defendants.[13]

---

10. This eliminated—and no question is raised here—the presumptions in § 376(b). See note 3 supra.

11. One witness testified that she belatedly discovered that she owed $61.00 in tax to the State of Florida for cigarettes purchased from defendants. Another testified that he found he owed $1700.00. Both asserted that had they known of the Florida taxes due on such purchases they would not have purchased by mail from North Carolina.

12. In denying the motion, the Judge relied primarily on United States v. Brewer, 4 Cir., 1975, 528 F.2d 492. There, under almost identical (although stipulated) facts, the Fourth Circuit upheld the District Court's conviction of defendant on the Mail Fraud Count for failing to report under the Jenkins Act. We credit the Trial Court's prescience in denying the Motion for Acquittal since we approve Brewer.

---

13                        Convictions and Sentences

| Names | Counts on which convicted | Sentences |
| --- | --- | --- |
| James D. Melvin | All | Committed to custody for one year as to Count I, and 6 mos. as to each of Counts 2–17 severally, but confinement to run concurrently with Count I. Also a $15,000 fine imposed. |
| Gregory A. Conner | 1–11 | Committed to custody for 6 mos. as to Count I and placed on probation for 2 yrs. as to Counts 2–11. |

*The Jenkins Act: Exclusive?*

The first question we address is whether the conduct charged and proved in connection with the interstate shipment of cigarettes through the United States mails in violation of the provisions of the Jenkins Act can constitute a violation of the Mail Fraud Statute.

The essential elements of an offense under the mail fraud statute are "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). The statute does not define a scheme to defraud, and it contains no restrictive language excluding any type of fraudulent conduct in which use of the mails plays an essential role. On the contrary, the plain language of the statute condemns any scheme to defraud in which the mails are employed, *Parr v. United States,* 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), including the evasion of sales and use taxes. *United States v. Mirabile,* 503 F.2d 1065, 1066 (8th Cir. 1974). It leaves "the matter of what conduct may constitute such a scheme for determination under other laws." *Parr,* 363 U.S. at 389, 80 S.Ct. at 1182.

The Jenkins Act requires the seller of cigarettes in interstate commerce to register with the tax officials of states where he advertises or into which he ships cigarettes and to furnish copies of invoices disclosing the purchasers' names and addresses. Violation is a misdemeanor. Florida imposes seventeen cents' tax on the sale or use of a pack of cigarettes. When cigarettes are shipped from outside the state, the recipient is responsible for paying the tax.

Almost the identical question we face was confronted by the Fourth Circuit in *United States v. Brewer, supra.* In that case, defendant, the operator of a cigarette mail order business, appealed from a judgment convicting her of mail fraud in violation of 18 U.S.C.A. § 1341. The District Court had ruled that she had defrauded Florida of taxes by using the mails without reporting the transactions to state tax officials as required by the Jenkins Act, 15 U.S.C.A. § 375 et seq. Defendant Brewer raised many of the same arguments that defendants raise in this case—that her use of the mails was not for the purpose of executing a scheme to defraud and that her failure to file the reports required by the Jenkins Act was not sufficient to sustain her conviction for mail fraud. The indictment in the Brewer case is almost identical to the indictment in this case. The only major difference between the two cases is that, in *Brewer,* the facts were stipulated that (i) Brewer used the mails for her interstate sales (ii) she sold the cigarettes for a stated amount without making any representation about taxes (iii) she paid all North Carolina taxes, but the purchasers did not pay the Florida use taxes they owed (iv) and Brewer was aware of the Jenkins Act but did not comply with it.

▪ Under these facts, the Court of Appeals held that "the evidence [is] sufficient to show that Brewer used the mails to

Footnote 13—Continued

Convictions and Sentences—Continued

| Names | Counts on which convicted | Sentences |
|---|---|---|
| Robert Pierce | 1, 2, 12–17 | Committed for 6 mos. on Count I, as to Counts 2, and 11–17 he was placed on probation for 2 yrs. |
| Carson R. Yeager | 9, 11, 13, 15–17 * Not guilty on Counts 1, 2, 8, 10, 12, 14, 16 | Committed for 4 mos. as to Counts 9, 11, 13, 15, 17; sentences to run concurrently. |

* Yeager was the only defendant acquitted of any counts.

execute a scheme to defraud and that the government could choose to prosecute her under the mail fraud statute." *Id.,* at 498. The facts as proved in this case are extremely close to those in *Brewer* and the indictments are almost identical. Under these circumstances, we are persuaded by Judge Butzner's fine opinion that the evidence in this case is also sufficient to show that defendants used the mails to execute a scheme to defraud and that the government could choose to prosecute them under the mail fraud statute.

In reaching his conclusion, Judge Butzner found that although

"using the mails for the interstate sale of cigarettes or other lawful merchandise is in itself an innocent act, it becomes fraudulent when the seller couples it with an intent to transact business in a way that enables his customers to escape taxes by dealing with him. Then it becomes, as the legislative history of the Jenkins Act notes, a form of tax evasion."

*Id.,* at 496.[14]

The evidence derived at trial, viewed through *Glasser*[15] glasses, shows that defendants intended to sell cigarettes, free of Florida taxes, to Florida residents. As in *Brewer,* the very success of the venture depended on the defendants' ability to undersell Florida competitors whose price necessarily included the Florida tax. The evidence also shows that defendants were aware of their duty to report under the Jenkins Act and their willful decision not to comply with the Act. This willful refusal to comply with the Jenkins Act "furnishes additional evidence of [defendants'] intent to ship cigarettes from North Carolina to Florida, knowing that Florida could not readily detect the sales and collect the taxes that were owed by [their] customers." *Id.,* at 496.[16]

In *Brewer,* it was held to be "immaterial that Brewer made no misrepresentations to either Florida residents or tax officials, for it is no defense that the papers sent through the mail are innocent in themselves if they are part of a scheme to defraud. *Parr v. United States,* 363 U.S. 370, 390, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960)." *Id.,* at 496. In the case now before us, however, there was evidence which showed that defendants made misrepresentations both to Florida residents and to tax officials. This provides even clearer proof of a scheme to defraud and criminal intent then was found in *Brewer.*

In *Brewer,* the Court also rejected the "defense that [defendant] herself owed no tax. It is enough that she knowingly devised a scheme that would enable Florida residents to obtain cigarettes without declaring them for taxation. One who consciously aids another in defrauding a government of taxes is a participant in the illicit enterprise. *Cf. United States v. Johnson,* 319 U.S. 503, 515, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943)." *Id.,* at 496.

14. " 'The [Jenkins Act] was enacted for three major reasons:

'(1) The large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce to consumers;

'(2) The discrimination caused by this evasion against sellers of cigarettes in States having a higher tax than the tax of the seller States; and

'(3) The fact that this evasion was accomplished through the use of the United States mail.'

S.Rep. No. 1147, 84th Cong., 1st Sess., U.S. Code Cong. and Admin.News 2883 (1955), quoting from the report of the Committee on Ways and Means."

*Id.,* at 496 n.7.

15. *Glasser v. United States,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

16. The evidence fully supports a finding that the defendants understandingly refused to comply with the Jenkins Act. Both Melvin and Pierce had previous convictions for violation of the Jenkins Act. Furthermore, the FBI and the Florida authorities had informed the defendants during the course of the scheme that they were required to report under the Act. Finally, the evidence shows that, when Jenkins Act reports were finally filed by defendants, the reports were incomplete and deceptive, sometimes including names which were false and failing to list the best of defendants' customers. This evidence furnishes strong circumstantial proof of defendants' willful refusal to comply with the Jenkins Act.

Thus, as in *Brewer,* the evidence before us is sufficient to sustain a finding of the first element of the offense of mail fraud—that defendants devised a scheme to defraud.

Like the defendant in Brewer, defendants here rely on *United States v. Maze,* 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603; *Parr v. United States,* 1960, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277; and *Kann v. United States,* 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, to support their argument that the use of the mails here was not sufficiently closely related to the scheme to defraud to bring the conduct within the mail fraud statute. However, "in each of these cases, the mails were used after completion of the fraud and did not affect the success of the scheme." [17] *Brewer, supra,* at 496.

In this case, by contrast, the use of the mails was an integral part of the scheme to defraud. Many of the sales were solicited through the mails, and all of the sales were completed through the mails. "When, as here, the mails play a significant part in a defendant's fraudulent conduct, it is apparent that they are used for the purpose of executing the scheme within the meaning of § 1341. *United States v. Sampson,* 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Green,* 494 F.2d 820, 826 (5th Cir. 1974)." *Id.,* at 497. We conclude, therefore, that the evidence was sufficient to prove that the use of the mails was sufficiently closely related to the scheme to defraud to bring the conduct within the mail fraud statute.

As do the defendants in this case, the defendant in *Brewer* argued that "at most she could only be convicted of a misdemeanor under the Jenkins Act. She contends that before the passage of this Act her conduct would not have violated any law and certainly not the mail fraud statute. Relying on the reference to the use of the mails in the legislative history of the Act, she seeks to demonstrate congressional intention to make the Act the exclusive federal statute governing the interstate sale of cigarettes by mail." *Id.,* at 497.

As did the Court in *Brewer,* we reject this argument:

"The plain language of the Jenkins Act, its legislative history, and judicial precedent refute this argument. The Act does not mention use of the mails. It requires the seller to furnish information about the interstate sale of cigarettes, regardless of the means of communication and delivery. For example, orders solicited by phone and delivered by truck must also be reported. The text of the Act does not indicate that it should be construed as a specialized mail fraud law preempting the general mail fraud statute.

The Act was passed to help the states collect cigarette taxes and to stem the loss of state revenues, estimated to be $40,000,000 annually.[18] Contrary to Brewer's assertion, Congress recognized before enacting the Jenkins Act that interstate sales of cigarettes could be a form of tax evasion when the transactions were accomplished by practices that

---

17. "In *Maze, Kann,* and the relevant charges at issue in *Parr,* the mailings relied on by the government were made by individuals other than the defendants after the fraudulent schemes were completed. The defendants had cashed fraudulently obtained checks (*Kann*) or had used credit cards for improper purposes (*Parr*) or had used stolen credit cards (*Maze*) to obtain cash, merchandise or services. The banks or the businesses which provided the services then used the mails to settle their accounts with the credit card owners or the banks on which the checks were drawn. The Court held that in these circumstances the mailings were not suffi-

ciently related to the defendants' schemes to support a finding that the mails were used 'for the purpose of executing [the] scheme to defraud' within the terms of § 1341. *Maze,* 414 U.S. at 402, 94 S.Ct. 645; *Parr,* 363 U.S. at 370, 80 S.Ct. 1171; *Kann,* 323 U.S. at 94, 65 S.Ct. 148.

Here, the government does not base any part of its case on the use of the mails to clear the purchasers' checks after Brewer cashed them."

*Id.,* at 496–97.

18. S.Rep.No.644, 81st Cong., 1st Sess., U.S. Code Cong.Serv. pp. 2158, 2159 (1949).

deliberately enabled the purchasers to escape taxes. Indeed, the primary reason for the Act was a desire to deal with '[t]he large and increasing loss of revenue to the States caused by the evasion of sales and use taxes on cigarettes shipped in interstate commerce.'[19] This legislative history indicates that the Act was passed to cope with existing illegality rather than to define a new kind of fraud."

*Id.* at 497–98.

"Brewer, therefore, may be convicted of mail fraud even though, by her own admission, she also violated the Jenkins Act. 'The mail fraud statute continues to remain an important tool in prosecuting frauds in those areas where legislation has been passed more directly addressing the fraudulent conduct.' *United States v. Maze,* 414 U.S. 395, 406, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974) (Burger, C. J., dissenting). When the same conduct violates overlapping statutes, the prosecutor can elect to charge the defendant under either. Thus, the mail fraud statute has been employed ·to prosecute persons whose fraud broke other federal laws. *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954) (Interstate Transportation of Stolen Property); *Edwards v. United States,* 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957 (1941) (Securities Act); *United States v. Green,* 494 F.2d 820 (5th Cir. 1974) (Truth in Lending Act); *Bozel v. Hudspeth,* 126 F.2d 585 (10th Cir. 1942) (Federal Trade Commission Act). Furthermore, prosecution under the mail fraud statute is not barred because its maximum penalty is greater than that prescribed by the Jenkins Act. *Cf. United States v. Gilliland,* 312 U.S. 86, 95, 61 S.Ct. 518, 85 L.Ed. 598 (1941);

*Hutcherson v. United States,* 120 U.S. App.D.C. 274, 345 F.2d 964, 967 (D.C.Cir. 1965)."

"Alternatively, even if conduct such as Brewer's had been lawful before the Jenkins Act, her claim that she can be prosecuted only under that Act rests on a faulty premise. The use of the mails by persons selling cigarettes in interstate commerce undoubtedly was one of the factors that moved Congress to help states collect their taxes.[20] But the Act, as we have noted, does not punish those who use the mails to sell cigarettes in interstate commerce. Instead, it regulates this business by requiring the disclosure of information helpful to the states. *United States v. Morris,* 516 F.2d 959 (4th Cir. 1975); *United States v. E. A. Goodyear, Inc.,* 334 F.Supp. 1096 (S.D.N.Y. 1971). Its constitutional basis is the commerce clause. *Consumer Mail Order Association of America v. McGrath,* 94 F.Supp. 705 (D.D.C.1950) *aff'd* 340 U.S. 925, 71 S.Ct. 500, 95 L.Ed. 668 (1951)." *Id.,* at 498.

"Brewer would have violated the Jenkins Act even if she had traded by means other than the mails, but advertising by radio, for example, would have exposed her and been self-defeating. The mails enabled her to transact her business surreptitiously, obtaining orders that she dared not openly solicit. Thus, she used the mails to circumvent the Act and avoid its regulatory provisions as part of her scheme to profit from the differential in Florida and North Carolina cigarette taxes.

The mail fraud statute provides a jurisdictional base for federal law enforcement. *See* 1 Working Papers of the National Commission on Reform of Federal

---

19. S.Rep.No.1147, 84th Cong., 1st Sess., U.S. Code Cong. and Admin.News 2883 (1955). See note 7, *supra.*

20. "'[C]ertain individuals and organizations are using the United States mails to circumvent State laws. Moreover, advertisements of organizations specializing in this business cite the availability and use of the United States mails as proof of legality of their operation.

Accordingly, your committee believes that respect for the laws of the sovereign States will be furthered by the passage of this bill and that the public interest will be served by eliminating any inference that the Federal Government approves of the circumventing of State laws.' S.Rep.No.644, 81st Cong., 1st Sess., U.S.Code Cong.Serv. pp. 2158, 2159–60 (1949)." *Id.,* at 498 n. 11.

Criminal Laws 33–67 (1970). But this is not the statute's sole function. It also prevents the post office from being used as an instrument of crime. *Durland v. United States,* 161 U.S. 306, 314, 16 S.Ct. 508, 40 L.Ed. 709 (1896). We conclude, therefore, that even if conduct such as Brewer's were lawful before the Jenkins Act, her use of the mails to escape regulation added a different element and a new dimension to her failure to comply with the Act."

*Id.,* at 498.

We conclude that the evidence was sufficient in this case to show that defendants used the mails to execute a scheme to defraud and that the government could choose to prosecute them under the mail fraud statute since the charge and the evidence met the essential requirements of a criminal mail fraud.

### Jenkins Act: Constitutional?

■ The defendants also complain that, even though not specifically charged with a violation of the Jenkins Act, the Act is unconstitutional. The basis for their argument is that, while the Jenkins Act regulates the interstate sale of cigarettes, it does not similarily regulate the sale of little cigars and thus creates arbitrary and unreasonable distinctions. A similar contention was considered and rejected by a Three-Judge District Court in *Consumer Mail Order Association of America v. McGrath,* D.D.C., 94 F.Supp. 705, *affirmed in* 340 U.S. 925, 71 S.Ct. 500, 95 L.Ed. 668 (1950). In that case, the Jenkins Act was attacked as being unconstitutional on several grounds, including "that the Act discriminates against cigarettes as a legitimate article of commerce in that other goods, and particularly other forms of tobacco, are left free from regulation." 94 F.Supp. at 712. The Three-Judge Court rejected all of these attacks and upheld the constitutionality of the statute.

21. *See also United States v. E. A. Goodyear, Inc.,* S.D.N.Y., 1971, 334 F.Supp. 1096, holding that the Jenkins Act reporting requirements did

In *United States v. Morris,* 4 Cir., 1975, 516 F.2d 959, the defendant made precisely the same argument as that made by defendants here—"that while the Jenkins Act regulates the interstate sale of cigarettes, it does not similarly regulate the sale of little cigars. This distinction between cigarettes and little cigars is . . . in violation of the Due Process Clause of the Fifth Amendment to the Constitution." *Id.,* at 960. The Fourth Circuit upheld the Act against this attack, on the "at least persuasive authority of *Consumer Mail Order Association* . . . ." *Id.* We do likewise.[21]

### Sufficiency of the Evidence

■ In rejecting the claims that the evidence was insufficient and that the Trial Court erred in denying defendants' Motion for Acquittal, only a few conclusory comments are needed. It is enough to say that the evidence, viewed under the standards set forth in *Glasser,* was sufficient to show that each defendant participated in the scheme and that each defendant had knowledge or should have had knowledge of the requirements of the Jenkins Act. Most important, the evidence shows that the defendant sellers, through their Florida customers, continued to use the scheme as an instrument by which lawful taxes due Florida were being evaded, despite their knowledge of the Jenkins Act requirements. Under these circumstances, we conclude that the evidence was amply sufficient to support the convictions of each defendant for violation of the mail fraud statute. Furthermore, once it is determined that this was a scheme to defraud and its operation contemplated an extensive use of the mails in its consummation there can be no real basis for challenging the sufficiency of the evidence to sustain the conspiracy counts. *See United States v. James,* 5 Cir., 1976, 528 F.2d 999; *United States v. Fontenot,* 5 Cir., 1973, 483 F.2d 315.

not violate the Fifth Amendment privilege against self-incrimination.

*Negative Jenkins Act Responses*

 The defendants also attack the Trial Court for admitting Negative Jenkins Act Listings sent to and compiled by the Florida Department of Beverages. There was no surprise since on discovery the Government had made them available to counsel. Indeed, at the time they were offered and received, no specific objection was uttered. It was not until the charge conference after the close of all evidence that objection was made. Under these circumstances, which closely parallel the usual plain error situation, we think that, whatever the error, it was harmless. *See* F.R.Evid. 103(a)(1).[22] The harmlessness of this error is highlighted by the fact that the record is replete with testimony of defendants' numerous purposeful failures to report under the Jenkins Act. There is also evidence that the defendants were willfully making only partial reports of persons who purchased cigarettes, with knowledge that full reports were required under the Act. Indeed, the whole theory of the defense was that reports were not regularly filed even though defendants were conscious of the Jenkins Act and its requirements.

*Tag Ends*

We have very carefully considered all other contentions raised and find them without merit.[23]

We find no reversible error below as to any · defendant.

AFFIRMED.

---

**22.** F.R.Evid. 103(a)(1) provides:

    *(a) Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

    *(1) Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.

**23.** Appellants complain of (i) the jury charge and instructions, (ii) the prosecution's final arguments and comments, (iii) the sentences imposed, (iv) the Court's failure to instruct on certain Florida Statutes and lesser offenses in his charge.