WINTER, Circuit Judge,
dissenting in part and concurring in part:
Respectfully, I dissent in part and concur in part. In my view, the alleged RICO violation by appellees was not the proximate cause of the City’s injuries, and therefore the City has no standing to bring the RICO action.[1] I concur in my colleagues’ disposition of the state law claims, which are asserted on the basis of diversity jurisdiction and therefore must be addressed even if no valid federal claim is asserted.
Where a civil RICO claim is based on fraud, not all injuries suffered by “but-for” victims of the fraud are proximately caused by the fraud. Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Only those injuries suffered by direct victims of the fraud are compensable. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). In addition, we have held that, with regard to RICO claims based on violations of a stat *459 ute as predicate acts, “the plaintiff. must show both that he is within the class the statute sought to protect and that the harm done was one that the statute was meant to prevent_ [T]he issue is ... one of statutory intent: was the plaintiff (even though foreseeably injured) in the category the statute meant to protect, and was the harm that occurred (again, even if foreseeable), [one] the statute sought to avoid.” Abrahams v. Young & Rubicam, Inc., 79 F.Sd 234, 237 (2d Cir.1996).
Determining whether a “but-for” RICO victim may recover for injuries suffered from fraudulent acts requires an analysis of the nature of the alleged fraud. Here, the fraud is not garden variety. There has been no misrepresentation of a material fact or omission that renders a material statement misleading. See United States v. Autuori, 212 F.3d 105, 118 (2d Cir.2000). Instead, the alleged fraud is based on violations of a statute, the Jenkins Act, and, therefore, the nature and consequences of the fraud are determined solely by the scope of that Act.
My colleagues and I may differ on the relevance of the Jenkins Act. They state, “Contrary to our colleague’s dissenting view, the predicate racketeering acts in this case are not Jenkins Act violations; rather ... they are wire and mail fraud violations.” Maj. Op. at 444. However, my colleagues describe the complaint’s allegations of mail and wire fraud as “us[ing] ... the mails or wires to effect a sale of cigarettes to New York City residents without complying with the Jenkins Act’s reporting requirements to the State.” Maj. Op. at 434-35. They also state that “the failure to file Jenkins Act reports with the State leads directly to the City’s alleged harm,” Maj. Op. at 441, and that “measuring the damages is as simple as counting the [cigarettes sold] to New York City residents without complying with the Jenkins Act,” Maj. Op. at 442. The only fraudulent acts alleged that sound in fraud, therefore, are the violations of the Jenkins Act.[2]
Taking my colleagues’ own descriptions of the alleged fraud at face value, I look to the Jenkins Act to determine the nature and consequences of the fraud. The Act is a regulatory provision directing mandatory disclosure of certain facts in order to facilitate tax collection by state taxing authorities. The Act requires those who sell tobacco products to purchasers in other states to report those sales and the identity of the purchasers to the state taxing authorities in the respective states. 15 U.S.C. § 376. The goal is solely to render evasion of state tobacco taxes by purchas *460 ers in the respective states more difficult. S.Rep. No. 84-1147 (1955), reprinted in 1955 U.S.C.C.A.N. 2883, 2883-84; S.Rep. No. 81-644 (1949), reprinted in 1949 U.S.C.C.A.N. 2158, 2158-60.
Absent the Jenkins Act, appellees would have owed no duty to disclose their sales to anyone, and their failure to disclose could not conceivably be deemed fraud of any kind. Appellees owe no taxes to the City. The tax evasion is by the purchasers of the tobacco products. Even with the Jenkins Act, which requires reporting only to state authorities, appellees have no duty to disclose anything to the City. Indeed, conspicuously absent from the City’s pleadings is any claim brought pursuant to the Jenkins Act itself, rather than RICO, seeking enforcement of the Jenkins Act, effectively an admission that the Act does not protect the City. See Piper v. Chris-Craft Indus., 430 U.S. 1, 37, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (no private right of action where a party is not one for whose benefit the statutory provision was enacted). There is, moreover, a Supreme Court decision in print.
In Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006), the Supreme Court held that injuries suffered by a competitor of a company that had gained a cost advantage by evading New York sales taxes were not proximately caused for RICO purposes by the tax evasion. In the Court’s view, the only “direct victim” was the state taxing authority. Id. at 458,126 S.Ct. 1991.
My colleagues seek to distinguish Anza in two ways. First, they emphasize that the plaintiff in Anza was a competitor of the defendant. If anything, however, the plaintiff in Anza had a stronger case with respect to proximate causation than the plaintiff here. In Anza, the defendant was the tax evader and had thereby lowered its costs and gained a competitive advantage over the plaintiff. In the present case, the City lost tax revenue because appellees sold cigarettes to purchasers, but did not report these sales to the State, as required by the Jenkins Act; because of this failure to report, the State was unable to pass on reports of such sales to the City even if it had been inclined to do so; without reports from the State, the City was unable to collect sales taxes from purchasers; concurrently, the purchasers individually opted not to fulfill their tax obligations to the City’s taxing authorities. The City was at best an expectant gratuitous donee of information from the State, and the suggestion that the City’s harm is somehow less attenuated than the plaintiffs in Anza seems to me unsustainable.
The mail and wire fraud statutes were probably aimed originally at mail-order sellers that misrepresented goods or real estate to distant buyers. They have been stretched to include a failure to provide information to state taxing authorities even where the providers of the required information owe no tax. United States v. Melvin, 544 F.2d 767 (5th Cir.1977); United States v. Brewer, 528 F.2d 492 (4th Cir.1975). However, this case is a further major expansion of mail fraud doctrine by allowing suits against defendants who owed no duty to provide information to the plaintiffs.
The second ground on which my colleagues seek to distinguish Anza rests on what is, in my view, a misreading of Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In Holmes, the Supreme Court explained that plaintiffs cannot bring RICO actions to recover for injuries caused indirectly by defendants because of: (i) the difficulty in ascertaining the amount of damages attributable to remote defendants; (ii) the challenge in apportioning recoveries among plaintiffs di *461 rectly and indirectly harmed; and (iii) the notion that RICO violations will be most effectively deterred by those best poised to bring an action, ie., the parties who were directly injured by the defendants. Id. at 269-70,112 S.Ct. 1311.
The majority accurately summarizes these justifications but then treats them as a stringent test that, if not met in other cases, overrides the direct causation requirement. See Majority Op. at 442-44. In my view, even if the Holmes’ rationale is not completely apt in a particular case, a successful plaintiff must still show that it is a direct victim and, where a statutory violation is alleged to have caused the plaintiffs injury, is a member of the class the particular “statute meant to protect” and the harm was one “the statute sought to avoid.” Abrahams, 79 F.3d at 237.
Moreover, the Holmes rationale applies to the present case. My colleagues’ view that information provided to the State under the Jenkins Act would in fact be passed along and would, without any cost or friction whatsoever — “as simple as counting the number of cigarette packs sold by defendants to New York City residents,” Maj. Op. at 442 — translate into precisely calculable tax revenue recovered from the various addressees is highly exaggerated.[3] A concern of taxing authorities everywhere is balancing the costs of collection against the recoverable revenue, a matter of great significance where the taxpayers are, as here, anything but inclined toward voluntary compliance. Moreover, the state appears uninterested in enforcing the Jenkins Act and may not collate or maintain accurate records of reports from out-of-state vendors or reliably pass them along. City customers, large numbers of individuals owing relatively small amounts in taxes, may be hard to trace, may assert various defenses in cases based solely on Jenkins Act reports, and may easily use non-City addresses. Finally, as to Holmes factor (iii), the City hardly has greater incentive to enforce the Jenkins Act through RICO than Anza-like competitors who lose sales because of their rivals’ sales tax evasion.
I therefore respectfully dissent in part and concur in part.

. This is not to say that I agree with my colleagues’ analysis of other objections raised by appellees with regard to the RICO claim. I simply do not address them.

. My colleagues also note that the fact that the statutory reporting duty is owed to the State rather than the City does not render the “harm [to the City] from the mail and wire fraud violations ... any less direct [because] [a]s the dissent recognizes, the mail and wire fraud statutes extend to protect taxing authorities from fraud.” Maj. Op. at 25 (citing United States v. DeFiore, 720 F.2d 757, 761-62 (2d Cir.1983)). This description of both the reach of the mail and wire fraud statutes and of this dissent are rather overbroad. Although the mail and wire fraud statutes have been used to prosecute cigarettes vendors and vindicate defrauded tax authorities in the past, no legal authority stands for the proposition that these statutes apply whenever a government is caused to suffer a loss of tax revenue with a but-for connection to a fraud, no matter how indirect. DeFiore itself involved the prosecution of the vendors who purchased cigarettes from out of state, that is, individuals who had an obligation to pay taxes. Id. at 760. And while these statutes have also been used to prosecute out of state sellers, that is, individuals who had an obligation to report sales to state taxing authorities, see United States v. Melvin, 544 F.2d 767, 772 (5th Cir.1977); United States v. Brewer, 528 F.2d 492, 494 (4th Cir.1975), there are no cases in which a failure to fulfill one’s obligation to report sales to a state tax authority has been adjudged an act of fraud upon a municipal tax authority.

. From the lack of any analytic discussion of the issue, I assume that my colleagues are not asserting that the measure of recoverable damages is the tax multiplied by the number of packs sold to City residents rather than the net revenue lost from the failure to file Jenkins Act reports.